BLAIR, Respondent, v. MARKS *et al.*, Appellants.

1. The fifty-sixth section of the act of July 4, 1807, (1 Terr. Laws, p. 138,) authorized the sale, under the order of the general court, of an intestate's estate for the payment of his debts, although he left no lawful issue.
2. The administrator was, in the case of such a sale, authorized to make a deed to the purchaser.
3. After the lapse of forty or fifty years from the date of such a sale, proof of the advertisements and other prerequisites of a legal sale could not be insisted on.
4. Where a party's acts are given in evidence, he may give in evidence, in rebuttal, other acts which are a part of, or connected with and explanatory of, those previously used against him.

*Appeal from St. Louis Circuit Court.*

This was an action of ejectment to recover a piece of ground at the south-east corner of Main and Bates streets, in the city of St. Louis. Both parties claimed title under Pierre Chouteau. The plaintiff, for the origin of his title, relied on a deed made by Chouteau to Merriwether Lewis in 1810. The defendants deduced title under a deed from Chouteau to Frederick Bates in 1815. The great question in dispute was the true position of the division line between the Lewis and Bates tracts. This question can be fully understood by examining the report of the case of Evans v. Greene, 21 Mo. 170, and the diagrams contained in that report. If the location of the Lewis tract should be established as marked out by the red lines of the diagram No. 1, the land in dispute would be brought within the Lewis tract.

The court gave the following instruction to the jury of its own motion : " The deed of Chouteau to Lewis having been made on the 3d of August, 1808, the jury must regard Chouteau's claim as it existed at that time ; and if his south-west corner was then understood by him and Lewis to be westward of his south-west corner as it was subsequently fixed by the United States survey, the jury must take it to have been at the place where it was then understood by the parties to be, in ascertaining what land he conveyed to Lewis."

The following instructions were given at the instance of the defendants : " 1. The court instructs the jury that the plaintiff claims title under Merriwether Lewis, and if the land in controversy lies outside of the tract conveyed by Chouteau to Lewis, the plaintiff can not recover in this action. 2. If the jury find from the evidence that in 1808 there was known or existed a line which would answer to the description given in the deed from Chouteau of ' the line separating the town lots from the lots which have been granted for cultivation,' then the point in Roy's upper line, which was the beginning point in the description of the Lewis tract, is to be found at the distance of forty-five perches from that separating line, whether the south-west corner of Chouteau's survey be in that line or not. 3. If the jury believe that Risdon H. Price located his tract acquired from Lewis' administrator in such manner that the south-east corner thereof was west of Main street, they will regard such location by Price as a practical construction by him of the deeds under which he claimed title ; and, if the location of that tract is otherwise not ascertainable, that practical location will be deemed to be the true one as against Price and those claiming under him. 4. In ascertaining the position of a tract of land conveyed by deed, the highest, and as a general rule the controlling, proof on the subject is the description of its position given by the parties themselves in the deed ; and in determining what the parties meant by that description the jury will pay greater regard to calls for

known or ascertained lines or corners than to calls for the courses of lines and their lengths.   5. If the jury find that Price, while the proprietor of the Lewis tract, in 1817, and Bates, his adjoining proprietor, caused the eastern line of said tract to be established, fixing the same west of the eastern line of the present Main street; that, contemporaneously with such establishment of the eastern line of the Lewis tract, Bates, Smith and Lisa, being proprietors of the adjoining land, with the knowledge and acquiescence of Price, laid out the land east of Main street into an addition to the town, subdividing the same into lots and selling said lots from time to time to different persons; that for more than fourteen years after the laying out of such addition neither Price nor any one under him laid claim to any part of such addition as being within the Lewis tract; and that the land now in controversy is part of such addition, and is held by the defendant under said Bates, Smith and Lisa, then the plaintiff claiming under Price can not recover in this action. 6. The jury are instructed, that, although in the description contained in the deed from Chouteau to Lewis the quantity of area mentioned is of least authority as a descriptive call, yet if the jury are in doubt as to the proper location of the tract by all the other calls, they may resort to the call for quantity to assist them in determining the proper location of the tract."

The following were given on the motion of the plaintiff: " 1. If the premises in question are included in the sheriff's deed to Darby, and in Darby's deed to Evans, and Evans' deed to Greene, and his to the plaintiff, and said deeds are genuine, and the title to said premises was in Risdon H. Price at the date of the judgment, execution and levy described in said sheriff's deed, then the plaintiff is entitled to recover, unless the jury should find the facts to be as set forth in instruction No. 5.   The rules of location are, 1st, natural boundaries; 2d, artificial marks; 3d, adjacent boundaries; 4th, course and distance; but though these are general rules, they are not inflexible; but an *inferior* means of loca-

tion may control a *higher*, when it is plain there is a mistake. The evidences of location are resorted to in their order, unless it appear from other satisfactory evidence that there is a mistake. 2. A diagram or plat annexed to a deed, and referred to in said deed as describing the premises therein mentioned, is a part of said deed, and must have the same force as if the description on said plat was contained in said deed. 3. The jury are instructed that they are not to regard the eastern line of the land, as conveyed by Post to Bates by deed given in evidence by the defendants, as evidence showing the location by Price of the lines of the Lewis land, unless they find from the evidence that said line was adopted by Price. 4. If the jury find that the tract conveyed by Price to O'Hara in 1820 can not be located in the south-east corner of the Lewis tract without disregarding the courses and bearings of the lines of said tract as described in the plat accompanying the deed from Price to O'Hara, nor without violating the northern boundary and western boundary as contained in said deed, and the true position of the mounds as then known, they will disregard the words of the general description contained in said deed from Price to O'Hara as follows: " On the *south-east* corner of the said tract of 30 arpens and 93 perches," and they may locate the said tract according to the boundaries and remaining descriptions in said deed, and the natural objects defined on the plats in evidence."

The court refused the following instructions asked by defendants: " 1. There is no evidence before the jury proving or tending to prove that the parties to the deed made by Chouteau to Lewis in 1808 intended or understood that the land thereby conveyed was within any particular concession, survey or tract of land known as one single tract. 2. The description contained in the deed from the administrator of Lewis to Price of the land thereby conveyed, is evidence against Price and those claiming under him, including the plaintiff, that the land acquired by Lewis from Chouteau was bounded westerly by the forty arpent lots. 3. The deed of Chouteau to Lewis having been made on the 3d August,

1808, the jury must regard Chouteau's claim as it existed at that time; and if his south-west corner was then under stood by him and Lewis to be westward of his south-west corner as it was subsequently fixed by the United States survey, the jury must take it to have been at the place where he then understood it to be in ascertaining what land he conveyed to Lewis."

The court also refused instructions asked by the plaintiff.

*Field, E. Bates* and *B. Bates*, for appellants.

*Dick,* for respondent.

NAPTON, Judge, delivered the opinion of the court.

The validity of the title in dispute in this case depends mainly upon questions of fact. The controversy turns principally upon the ascertainment of the true location of the south-west corner of the tract conveyed by Chouteau to Merriwether Lewis. Whether this corner was fixed by Chouteau in what is now known to be the eastern line of the common field lots, was a question of fact determined by the jury in this case under instructions not complained of. The jury have found that Lewis' south-west corner was not in this line, but some two hundred and twenty feet east of it. Assuming that the Lewis tract is a part of the Chouteau concession, and that the south-west corner of the two tracts is identical, the question still remained whether the corner established by Brown, in 1817, was the same established by Soulard in 1803 ; for it is clear that Chouteau's conveyance to Lewis, in 1809, by metes and bounds and fixed monuments, can not be controlled by a survey made in 1817. The landmark set up by Soulard at the south-west corner, in 1803, is gone. Hence a mass of testimony was introduced on either side to establish this corner, the plaintiff maintaining that the United States survey of Brown, in 1817, was correct, and established the south-west corner of the survey precisely where Soulard had previously located it, and the defendant insisting that Brown's corner had been placed at least fifty

or sixty feet east of the old Soulard corner. If the latter supposition was true, the defendant was entitled to a verdict, as it appears that a removal of Brown's survey fifty or sixty feet westwardly would leave the defendants' lots outside of the Lewis tract. If the plaintiff's view prevailed, the Lewis title, under which he claimed, would cover the land in dispute. Upon this question of fact, no opinion of this court will be expected, or would be material. Our duty is limited to see that this question was tried under instructions not unfavorable to the party who lost the verdict, and that no illegal evidence was introduced, and no legal evidence excluded.

One of the first links in the chain of the plaintiff's title is a deed from the administrator of Merriwether Lewis, in 1811; and it is insisted that this deed was unauthorized by law; that the sale of which it was evidence was unwarranted by the statute; and that the proofs, which would alone justify the admission of such a deed, supposing the law to have warranted both the sale and the deed, are wanting. The act of 1807, under which this proceeding was had, is as follows (Terr. Laws, p. 138) : " If any person shall die intestate, being owner of lands and tenements within this territory at the time of his or her death, and leave lawful issue, but not sufficient personal estate and slaves to pay his just debts and maintain his children, in such case it shall and may be lawful for the administrator to borrow or mortgage, &c., or to sell and convey such part or parts of said lands and tenements as the general court shall in either case, from time to time, think fit to allow, &c., for defraying the debts, maintenance of the children," &c., &c.

It is said that it nowhere appears upon the record of the proceedings of the general court, on the application of Hempstead, administrator of Lewis, to sell real estate of the deceased for the payment of his debts, that he died leaving lawful issue, and therefore that the court had no power to order a sale. This is not our construction of the law. No motive could be suggested that could possibly induce the

legislature to authorize a sale of the lands of a decedent to pay his debts when he left issue, and deny the power when he left none. To give the power in the former case, implies its existence in the latter. If the legislature would permit the lands of a decedent to be sold although he left children, *a fortiori* would they allow this to be done when he died childless; and this is doubtless the proper construction of the act, although it must be admitted to be expressed in a peculiar and rather inartificial manner. Besides, a contemporaneous construction of this law by the highest judicial tribunal in the territory, made nearly fifty years ago, would hardly be disturbed by this court now, whatever views might be entertained of its true interpretation. But we entertain no doubt that the construction given to the act by the general court of the territory was the correct one.

The power of the administrator to make a deed is implied in the power to sell. Indeed, the language of the statute is to " sell and *convey*," thereby giving the administrator an express authority to make a deed.

The report of Hempstead, administrator of Lewis, to the general court, of his sale under their order, is sufficient evidence that all the prerequisites to a sale required of him had been complied with. After a lapse of forty or fifty years, proof of the advertisements, which the law required and the court ordered, would hardly be expected or required.

There was no error in permitting the plaintiff to give in evidence the deed from O'Hara to Price, and the accompanying plat. The defendant had given in evidence the deed from Price to O'Hara, obviously with a view to show how Price, under whom plaintiff claimed, had practically located the O'Hara tract. This testimony was legitimate and was admitted, but the admission of this deed from Price to O'Hara undoubtedly authorized the plaintiff to explain Price's conduct in relation to the location of that tract. The testimony was strictly in rebuttal and explanatory of what had been used by the defendant as admissions or declarations or acts of the plaintiff. When Price accepted the deed from

O'Hara, reconveying to him a part of the identical tract which he had previously conveyed to O'Hara after it had been subdivided into town lots, he became a party to that deed and its accompanying plats ; and his act in receiving the deed and acquiescing in the location which that deed tended to prove, was proper to go to the jury in connection with his original deed to O'Hara. The evidence was admissible, we think, upon the same principle which allows a party, whose declarations, admissions or acts are given in evidence by his adversary, to give in evidence further declarations or acts which are a part of, or connected with and explanatory of, those previously used against him.

The second instruction, which is found among the defendant's refused instructions, was properly refused. At all events, its refusal is not, according to the established practice of this court, a ground for reversing the judgment. The deed from Lewis' administrator to Price was in evidence ; it was undoubtedly evidence that the land thereby conveyed was bounded on the west by the forty arpent lots, for such was the language of the deed. This the jury could plainly observe without any special instruction on the subject; but when the attention of a jury is called by the court to any specific piece of testimony, it frequently misleads a jury into an idea of its importance which it may not deserve and which the court would not attribute to it. Had the instruction been so framed as simply to call the attention of the jury to that part of the deed as *one* of the circumstances which they might consider in coming to a conclusion relative to the location of this tract, it would probably have done no harm, and the giving of such instruction would have constituted no error; but the instruction was not asked in this shape, and its language might have misled.

The first of the defendant's refused instructions was properly refused. The third is identical with the one given by the court.

The fourth instruction given for the plaintiff is objected to, but that objection presents the same question which was

Blair v. Marks.

raised by the admission of the deed from O'Hara to Price. If the deed and plat were admitted, the court committed no error in declaring the principles of law which ought to guide the jury in locating the O'Hara tract. To the other instructions given for the plaintiff no substantial objections have been suggested. Although the first instruction has been criticised, we do not think it could have been misunderstood. It seems merely designed to convey the idea, that, if the Lewis tract covered the land in controversy, the plaintiff was entitled to recover, unless the fact of an estoppel was found. We can hardly suppose that the jury had any difficulty in understanding it, or that it could possibly have misled.

We do not wish to be understood as passing any opinion upon the plaintiff's refused instructions. Whether right or wrong, their refusal can be no ground of error here. Other cases, as we are informed by the counsel, are still pending concerning portions of this same tract, and therefore an examination of the evidence in detail has been abstained from. It is manifest that there was conflicting testimony, and as we have no power to disturb the verdict, whatever our opinion might be upon the facts, it is unnecessary to express any. The court which tried the case has sanctioned the verdict, and according to well established rules of this court we do not interfere in a case of conflicting testimony.

Judge Scott concurring, the judgment is affirmed. Judge Richardson not sitting, having been of counsel.