BURNS BROS., Appellant, *v.* THE CITY OF NEW YORK, Respondent.

First Department, June 8, 1917.

**Water and water rights — easements of riparian owners in lands in the city of New York formerly under water — action of ejectment — respective rights of sovereign and riparian owners — grant of sovereign rights to city of New York — rights of city to said lands under water similar to those of State — city may not appropriate easements of riparian owners except by eminent domain — effect of construction of wharves by riparian owners under municipal permit — when such construction no basis for title by adverse possession — ejectment does not lie where parties have mutual rights in same premises.**

Prior to the enactment of chapter 285 of the Laws of 1852 an owner of uplands abutting upon the Harlem river between the present One Hundred and Sixth and One Hundred and Seventh streets in the city of New York had an easement in the adjacent lands under water of passage

to and fro to land boats and merchandise, and for that purpose to construct docks or piers thereon. The State held the title in fee to the lands under water, subject to this easement, but vested with the power in its governmental capacity to improve the waters for the purpose of navigation to the detriment of the rights of the upland owner, for the reason that there are certain rights of navigation and commerce by water which are common to all.

When by the enactment of the statute aforesaid the people of the State granted its rights in said lands under water to the city of New York and authorized the establishment of Exterior street, so called (a street not yet completed), but reserved to upland proprietors a pre-emptive right to all grants which might be made by the State of said lands under water, the city as grantee of the State and vested with the fee held the lands in trust for the public for the promotion of commerce and general welfare, subject, however, to the easements of riparian owners. The permission to lay out Exterior street did not give to the city the right to take without compensation the easements of riparian proprietors as this would be beyond the constitutional power of the Legislature.

When the city of New York under legislative authority established the bulkhead line of the Harlem river, as shown upon the Southard map, and subsequently in 1865 granted in fee to McCaddin, the owner of uplands between the present One Hundred and Sixth and One Hundred and Seventh streets, lands under the waters of the Harlem river in front of his uplands upon the condition that the grantee, or his heirs and assigns, should construct good and sufficient bulkheads on the established line and fill in behind the same at his own cost and expense and keep in repair such streets and avenues as were then or might thereafter be laid out through said premises, which deed expressly provided that the use of the names One Hundred and Sixth and One Hundred and Seventh streets and other avenues was solely for the purpose of description and that the grantor reserved said streets to itself, the fee of the lands formerly under water between Exterior street and Avenue A remained in the city.

But, even though the city of New York retains the fee in said lands, it does not follow that it is entitled to a judgment of ejectment as against the successors of McCaddin holding under mesne conveyances from him, for as riparian owners they have easements in the lands formerly under water to the limit of the bulkhead line and they and their predecessors had a right to construct such docks and bulkheads as were necessary to the enjoyment of such easements of which they could only be deprived by an exercise of eminent domain for a public purpose upon the payment of compensation.

Hence, where there is no claim that the present owners or their predecessors in title have in any way failed to perform the covenants in the grant by the city to them and their easements have not been taken by eminent domain, they cannot be ejected from the lands formerly under water merely because the city is the owner of the fee thereof, for such ownership is in trust merely and can only be exercised in the interest of the

public and in the execution of the trust, especially so where the grant by the city was made upon the payment of a valuable consideration.

However, when the Legislature by chapter 105 of the Laws of 1868 authorized the abandonment of Exterior street for the uses designated in the act of 1857, and under the authority of said former statute the city of New York gave permission to the proprietors of water grants to erect piers and wharves within the bulkhead line, and a grantee of said McCaddin, pursuant to municipal permission, actually constructed such wharves, his successors are not entitled to succeed in an action of ejectment against the city of New York upon the theory that they have acquired title to the lands formerly under water by adverse possession. This, because the erection of such wharves was not an assertion of a hostile claim of title to the premises, for the grantees remained in possession under a known title derived from the city by the grant to McCaddin.

A title by adverse possession only arises from long-continued use or possession when a man can show no other title or right of possession, the law implying a grant from the fact of a continued use or possession without objection. If other title or right of possession can be shown no right in the premises adverse to that right or title will be implied from possession. The possession or use will be held to be under the known title.

Thus, the mere statement of an unfounded claim by one in lawful possession cannot change the character of his possession nor impose any obligation on the other party to alter his position in relation thereto.

As both of the parties to this action have rights in the property wh ch they may continue to hold and enjoy, neither is in a position to eject the other therefrom.

APPEAL by the plaintiff, Burns Bros., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 22d day of November, 1916, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 20th day of November, 1916, denying plaintiff's motion for a new trial made upon the minutes.

The judgment determined that defendant is the owner in fee simple and entitled to possession to certain real property and directed that it be let into the possession thereof.

*Charles E. Hughes,* for the appellant.

*Charles J. Nehrbas,* for the respondent.

PAGE, J.:

The action is brought pursuant to the provisions of section 1638 *et seq.* of the Code of Civil Procedure, to compel the determination of a claim to certain real property bounded

northerly by the south side of One Hundred and Seventh street; easterly by the Harlem river; southerly by the northerly side of One Hundred and Sixth street and westerly by what would be the easterly line of Avenue A, if said avenue were physically laid out. These premises are entirely within the limits of Exterior street as designated upon the Southard map, but never physically laid out or used as a street. The plaintiff claims title in fee simple absolute by virtue of an adverse possession, and demands judgment that the defendant be barred from all claim to any estate, right, title, interest, lien, claim or demand in, to or upon the premises. The defendant denies the plaintiff's title and pleads its own title in fee simple absolute, and demands judgment that the complaint be dismissed; that the defendant is seized of and entitled to the possession of the premises, and that the plaintiff be barred from any estate, right, title, interest, easement, lien, claim or demand in, to or upon the property hereinbefore described except easements of light, air and access. Thus there is put in issue all the rights in these premises and the judgment of the court is invoked to determine the respective rights of the parties in the premises. In the case of *Consolidated Ice Co.* v. *Mayor, etc.* (166 N. Y. 92, 100) the court, speaking of a similar action, said: "An action is not maintainable for the purpose of obtaining an adjudication that a plaintiff has easements or rights of any character in the lands of another, and where the conclusion that the plaintiff had failed to prove such facts as would entitle it to maintain an action under the statute, was reached by the court, it was its duty to dismiss the complaint, instead of holding it and attempting to give a kind of relief for which the statute does not authorize the maintenance of an action." In that case, however, the defendant did not plead its title and demand that the judgment should bar the plaintiff from all right or claim in, to or upon the premises.

In order to ascertain the rights of the parties and to properly comprehend the legal effect of the various documents offered in evidence at the trial, it is necessary to consider the respective rights and obligations of the predecessors in title to the parties hereto prior to the grant by the city to Henry McCaddin, Jr., in 1866. By reference to that deed it appears that prior

thereto McCaddin was the owner of the upland abutting upon the Harlem river adjoining the premises which were then a part of the tideway of that river. The courts of this State have had occasion to consider and declare the rights of the owners of the upland abutting upon the Harlem river, and they have been thus summarized: " The owner of uplands abutting upon a navigable river where the tide flows and ebbs, takes title only to high-water mark. While he does not own the tideway, or the lands under water beyond the same, he has the easement of passage and the transportation of merchandise, to and fro, between the navigable water and his land; to fish and draw nets; to land boats and to load and unload the same. These privileges are absolute property rights as against all but the State. The State holds the title in fee in the tideway and to the lands under water beyond the same, as trustees for the public in its organized capacity. As such trustee and in the exercise of its governmental functions, it may improve the tideway or the adjacent waters for the benefit of navigation, even to the detriment of abutting upland owners and without compensation to them." (*Matter of City of New York*, 168 N. Y. 134, 143; *Sage* v. *Mayor*, 154 id. 61, 70.)

The right of the riparian proprietor on a navigable stream to make a landing wharf or pier for his own use or for the use of the public, subject to such general rules and regulations as the Legislature may see proper to impose for the protection of the rights of the public, has been stated by the Court of Appeals to have been comprehended in the language above cited. (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74, 85; *Barnes* v. *Midland R. R. Terminal Co.*, 193 id. 378, 383.)

Therefore, prior to 1852, McCaddin and his predecessors in title to the upland had an easement in the lands under water, of passage to and fro, to land boats and merchandise, and for that purpose to construct a dock or pier thereon. The State held the title in fee to the land under water subject to this easement, but vested with the power, in its governmental capacity, to improve the waters for the purpose of navigation, to the detriment of the rights of the upland owner, for the reason that there are certain rights of navigation and commerce by water which are common to all.

By chapter 285 of the Laws of 1852 the mayor, aldermen and commonalty of the city of New York were given the right to lay out and fix a permanent exterior street along the shore of the Harlem river between the East and Hudson rivers, and to cause a map to be made and filed. It was also provided that the several streets and avenues of said city as laid out on the map or plan made pursuant to the act of 1807 (Chap. 115) or as subsequently established by law shall be continued and extended along their present lines, from their present terminations to the said exterior street. By said act there was granted to the city all the right and title of the People of the State to the lands covered with water along the shore of the said Harlem river, from the East to the Hudson rivers and extending from low-water mark to and including the said exterior street or permanent line. There was also given to the proprietors of all grants of land under water or the owners of the upland, a pre-emptive right in all grants which may be made by the city, if any, of the said lands thereby granted.

The city thus became vested with the fee of the lands under consideration, and as grantee of the State held the same in trust for the public in its organized capacity for the promotion of commerce and the general welfare, but also subject to the easement of the riparian owners. Permission that was given to lay out Exterior street did not give to the city the right to take without compensation the easement of the riparian proprietors, as this would be beyond the constitutional power of the Legislature. (*Matter of City of New York, supra,* 145.)

The Legislature (Laws of 1855, chap. 121) authorized the appointment of a board of commissioners for the purpose, among other things, of establishing exterior water lines along the fronts of New York city, beyond which no permanent erections or obstructions were to be made. This commission reported to the Legislature and by chapter 763 of the Laws of 1857 the bulkhead and pier lines were established in accordance with a map filed by the commission with its report.

In the years 1858 and 1859 resolutions were passed by the boards of aldermen and councilmen of the city confirming the survey and map of Exterior street, which is usually designated as the " Southard map." It is interesting to note

that the expressed purpose of laying out this street was that the building of the bulkhead and the contiguous street would be of advantage to shipping and commerce.

On January 16, 1866, the mayor, aldermen and commonalty of the city of New York, in consideration of $504.59, granted to Henry McCaddin, Jr., and his heirs and assigns forever: "All that certain land under water on Harlem river in front of the upland owned by the said party of the second part between 106th street and the center line of 107th street in the 12th ward of the city of New York." (Then follows a description by metes and bounds and a map thereof is annexed to the deed and reference made thereto.) "Saving and reserving out of the hereby granted premises so much thereof as may form part of any street or streets, avenue or avenues, that may now or hereafter be designated or laid out through said premises according to law, for the uses and purposes of public streets, avenues and highways, as hereinafter mentioned."

The habendum is in fee. The party of the second part covenants that he, his heirs and assigns, "shall and will, within three months next after they shall be thereunto required by the said parties of the first part or their successors, at his or their own proper costs and charges, build and erect, make and finish or cause to be built, erected, made and finished according to any resolution or ordinance of the said parties of the first part, or their successors, already passed or adopted, or that may hereafter be passed or adopted, good and sufficient bulkheads, wharves, streets or avenues which shall form so much and such parts of any street or streets, avenue or avenues, that may now or hereafter be designated or laid out through said premises, according to law, as fall within the limits of the premises first above described, and are reserved as aforesaid from out therefrom, and will fill in the same with good and sufficient earth and regulate and pave the same and lay the sidewalks thereof."

The deed further provides that the party of the second part, his heirs and assigns, will at all times forever, at his own cost and expense, maintain and keep in good order and repair all those parts of streets or avenues that may now or hereafter be designated or laid out through said premises according to law which he has covenanted to build and to

First Department, June, 1917.                    [Vol. 178.

obey, fulfill and observe such ordinances, resolutions or orders and directions as the said parties of the first part and their successors shall from time to time pass or make, relative thereto. He further covenants that the said streets and avenues shall forever thereafter continue to be and remain public streets, avenues and highways for the free and common use and passage of the inhabitants of said city, in like manner as the other public streets, avenues, bulkheads and wharves of the said city now or lawfully ought to be. The deed then provides the effect of a default of the party of the second part, his heirs or assigns to perform the above covenants. The party of the second part agrees to pay all taxes, assessments and impositions, ordinary and extra, as are now or thereafter may be imposed or levied upon the property. It was further covenanted that the party of the second part would not build said wharves, bulkheads, streets or avenues or make the lands until permission for that purpose should be first obtained, and would not build or erect any wharf, pier or other obstruction in the Harlem river, in front of the hereby granted premises without the permission of the city.

The parties of the first part covenant that the party of the second part, his heirs and assigns, observing and fulfilling the covenants and agreements of the deed shall " from time to time and at all times hereafter fully have and enjoy, take and receive and hold to their own proper use all manner of wharfage, cranage, advantages or emoluments growing or accruing by or from that part of the exterior line of the said city, lying on the easterly side of the hereby granted premises fronting on the Harlem river, with full power to collect and receive the same for their own proper use and benefit forever." It is further agreed between the parties that the true intent and meaning of the parties to the deed is that nothing therein contained shall be construed or taken to be covenants of warranty or of seizin of the parties of the first part " or to operate further than to pass the estate, right, title or interest they may have or may lawfully claim in the premises hereby conveyed by virtue of their several charters and the various acts of the Legislature of the State of New York." There is a further provision that if at any time it shall appear that the party of the second part was not seized in fee of the upland

at the date of the deed, the grant shall be void.    It is further: " Expressly declared that in using the names of 107th Street, 106th Street, First Avenue and Avenue A in the foregoing description and on the map hereto annexed, it is not intended to dedicate to the public the said streets and avenues, or any part thereof, or of the land which may be used for the same, but that the use of such words was made solely for facility of description of said premises, and for no other purpose, and that the said party of the second part reserves to himself the said streets and avenues and the land comprising the same to the same extent as though the words 107th Street, 106th Street, First Avenue and Avenue A, had not been used herein or on the map hereto annexed."

It is the claim of the city that  the land shown on said map as comprised within the lines of Exterior street and Avenue A was  expressly reserved from said grant, and that plaintiff had no right, title or interest therein.    It is not contended that the grantee and his assigns have not performed all the covenants on his or their part to be performed, and it is conceded that the city has never required the grantee to regulate and pave any streets or avenues on said premises, nor has the city since the grant laid out any street or avenues through said lands, nor has Avenue A or Exterior street been opened.

The map annexed to the deed shows that all the land granted except a triangular piece at the corner of One Hundred and Seventh street having a frontage of about sixty feet on Avenue A and an equal frontage on One Hundred and Seventh street lay within the lines of Avenue A and Exterior street as shown on the map annexed to the deed.    As to this triangle the deed granted the fee to McCaddin.

As to that portion lying within the lines of Exterior street and Avenue A it has been held that the fee remained in the city in a case in which the deed, made five years later and conveying land under water on the Harlem river six blocks north of the premises under consideration, which contained a similar reservation.    (*Consolidated Ice Co.* v. *Mayor, etc., supra.*    See, also, *Sage* v. *Mayor,* 154 N. Y. 61; *Mayor, etc.,* v. *Law,* 125 id. 380.)   If we were not concluded by these decisions, it would be my individual opinion that a qualified fee passed to McCaddin;

that the estate vested determinable upon a condition subsequent, viz., that if the city gave three months' notice to the grantee, his heirs or assigns to regulate and pave any streets or avenues, as may then have been or might thereafter be designated or laid out through said premises according to law, for the uses and purposes of public streets, that he would at his own expense regulate, grade and pave the same. The covenant by the grantee would then become effective, that the said streets and avenues should forever thereafter continue to be and remain public streets and avenues and highways for the free and common use and passage of the inhabitants of the city. Any easements that the grantee had in or over the premises would merge in the fee, and by virtue of this covenant the city would become forever possessed of the land for street purposes free of any easement therein. If, however, the grantee, his heirs or assigns failed to perform the condition the entire estate granted would revert to the city. Until the city gave the notice, the grantee, his heirs and assigns would have the full beneficial enjoyment of the premises and entitled to the rents, issues and profits thereof. This construction, in my opinion, gives effect to the various covenants and agreements in the deed and makes each part thereof harmonious with the others. There is one provision in the deed under consideration that is not found in the deed in the case of *Consolidated Ice Co.* v. *Mayor, etc.* (*supra*) and that is that by the use of the words One Hundred and Sixth, One Hundred and Seventh streets, First avenue and Avenue A, it was not intended to dedicate the same to the public but that the use thereof was for facility of description merely and for no other purpose and " the said party of the second part reserves to himself the said streets and avenues and the land comprising the same to the same extent as though " the said words " had not been used herein or on the map hereto annexed." While this language is an indication to my mind of the intent of the parties as to the effect of the deed, it is not in itself sufficient to distinguish this case in principle from the *Consolidated Ice Co.* case, inasmuch as the remainder of the deeds are in almost identical phraseology.

Even if the city reserved the land within the limits of the street and, therefore, is seized in fee, it does not follow that it

was entitled to the judgment of ejectment granted in this case. The plaintiff is in possession of the premises by virtue of mesne conveyances from Henry McCaddin, Jr., and the express consent of the city, as will more fully appear later in this opinion. As riparian owner of the upland adjoining the premises the plaintiff has the easements of such owner in the land under water to the limit of the bulkhead line established by the harbor commissioners and had the right to construct such docks and bulkheads as were necessary for the enjoyment of his easements (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74, 85; *Barnes* v. *Midland R. R. Terminal Co.*, 193 id. 378, 383) subject to the right of the State or its successor, the city, which held the fee in trust for the purposes of promoting navigation and commerce, to make necessary changes thereto in execution of its trust. In executing its trust the riparian rights of the owner of the upland could be destroyed or impaired, if public necessity demanded it for the promotion of commerce and navigation (*Sage* v. *Mayor*, 154 N. Y. 61), but the city could not destroy or impair the easements of the riparian owner for other purposes without compensation. (*Matter of City of New York*, 168 N. Y. 134.) This right of the plaintiff and its predecessors in title to improve the land between high and low-water mark and beyond, for the purpose of enjoying the riparian easements, is recognized in the McCaddin deed, which contains an express provision that the grantee would not build or erect any wharf or pier or other obstruction in the Harlem river in front of the premises thereby granted without permission of the city. It is also recognized in the provision of the deed that if it should appear that the grantee was not the owner in fee of the upland the grant should be void. The pre-emptive right in the owner of the upland to any grant of the lands under water made by the city, secured by the act of 1852, was to safeguard the riparian easements of such owner.

The city can only curtail or restrain the exercise of this right by the plaintiff, as owner of the upland, when the public welfare makes it necessary to do so, or the plaintiff has failed to perform the covenants of his grant. It cannot eject the plaintiff, merely because it is the owner of the fee, for its

ownership of the fee is in trust, merely, and can only be exercised in the interest of the public and in execution of the trust, and for the further reason that the plaintiff is in possession, with the express permission of the city granted upon a valuable consideration, in the enjoyment of easements of which it cannot be deprived summarily and without adequate compensation. The city can, therefore, gain possession of these premises free from the easements of the plaintiff only through the power of eminent domain, so long as the covenants and agreements of the grantee, his heirs and assigns, in the McCaddin deed are faithfully performed. The judgment that the city of New York is seized of an estate in fee simple absolute in the premises and all estate and rights therein and be let into possession thereof and that the plaintiff, Burns Bros., has no right or interest in or to the premises must, therefore, be reversed and the counterclaim dismissed.

The question remains, is the plaintiff entitled to a judgment against the city. In considering this further facts must be stated. By the act of 1857 (*supra*) a continuous bulkhead along the water front in this part of the Harlem river was contemplated. In 1868 it was enacted (Laws of 1868, chap. 150) that " It shall be lawful for the proprietors of the grants of land under water in the Harlem river, between termination of the Second avenue and the East river, instead of building an exterior continuous bulkhead, as now laid out by the harbor commissioners, to erect piers and wharves therein, and to excavate the slips between the same, but in no case shall any such pier or wharf be extended into the river further than the said exterior line, as fixed by the said harbor commissioners." This act was amended in 1872 (Laws of 1872, chap. 487) by substituting Third avenue for Second avenue. (See, also, Consol. Act [Laws of 1882, chap. 410], § 733.)

The Legislature thus authorized an abandonment of Exterior street for the uses designated in the act of 1857 and the purposes declared in the resolutions of the commonalty of the city in laying out the street, and gave permission to the proprietors of water grants to erect piers and wharves within the limits of said street and excavate the land between such piers and wharves. On the 17th day of April, 1883, Henry McCaddin, Jr., conveyed the upland and the property conveyed by

the last-mentioned deed to Robinson Gill, which conveyance was subject to all the conditions, reservations, covenants and agreements contained in the deed of the mayor, etc. to McCaddin. On the 24th day of December, 1883, Robinson Gill made application to the board of dock commissioners of New York city as follows:

"NEW YORK, 24 *Decr.*, 1883.
*To The Board of Docks Commissioner,*
"New York City:

"The subscriber being the owner of upland indicated by blue color on the plan hereto annexed, reference being had to said plan for location &c. and also of the adjoining land between the high-water line and Harbor Commissioners exterior line as indicated by pink color on said plan and being desirous to so improve the same, as to make it available for use in his business of stone working and also to provide wharfage with steam hoisting facilities &c., for himself and such others as may require the use of them, would respectfully request your permission to enclose with a suitable wall such part of said land as lies west of the easterly line of Avenue A. and fill in the same to the grade of Avenue A. and also to build easterly from said wall to the Harbor Commissioners exterior line, a suitable pile wharf of such construction as your Board may direct.

"Yours respectfully,
"(Signed) ROBINSON GILL.
"Per C. L. P."

On February 29, 1884, the secretary of the board of dock commissioners wrote to Robinson Gill as follows:

"*Feby. 29th,* 1884.

"ROBINSON GILL, Esq.:

"SIR.—At a meeting of the Board governing this Department held on the 28th inst., the following resolution was adopted:

"*Resolved,* that permission be and hereby is given to Robinson Gill, alleged owner of land under water between 106th and 107th Streets, East and Harlem Rivers, and of the upland adjacent thereto, to construct and maintain; provided the same is commenced and completed within the

next twenty months, a retaining structure of solid pile work with a platform about twenty feet wide, supported on piles in front thereof, on the west side of Harlem River, from the north side of 106th Street to the south side of 107th Street, the outer or river face of said platform to be located on the Bulkhead line as at present established for said river, and to fill in behind the said retaining structure with good stone and clean earth and other suitable material up to the established grade of the said Bulkhead, the entire structure to be built under the supervision and direction of the Engineer-in-Chief of this Department, and in accordance with specifications therefor to be submitted to this Board for its approval of same; also provided the said owner file in this Department within ten days after adoption hereof, an agreement in writing that he will change or remove the said structure whenever the Bulkhead line for Harlem River shall be changed by the proper authorities so as to require the same to be done, and that if required by the terms and conditions as provided in the grant of the said lands by the City, he further agrees that he will pay one-half the cost of building a suitable Bulkhead at the foot of 107th Street, Harlem River.

" Yours respectfully,

" JOHN I. CUMING,

" *Secretary.*"

And Robinson Gill, on the 8th day of March, 1884, wrote the commissioners of the department of docks acknowledging the receipt of a copy of the resolutions and accepting the permission subject to the conditions therein contained. Thereupon Robinson Gill proceeded to fill in the land under water and built a wharf on the premises.

The plaintiff predicates its claim to a title by adverse possession upon the statement in Gill's application to the board of dock commissioners that he is the owner of the upland and also of the adjoining land between high-water line and harbor commissioners' exterior line. This was not, however, an assertion of a hostile claim to title in the premises. Gill was in possession of the premises through a known title derived from the city by the grant to McCaddin. A title by adverse possession only arises from long-continued use

or possession when a man can show no other title or right of possession, the law implying a grant from the fact of the continued use or possession without objection. If other title or right of possession can be shown, no right in the premises adverse to that right or title will be implied from possession; the possession or use will be held to be under the known title.

The application to the board of dock commissioners was made in exact compliance with the covenant in the deed to McCaddin that the grantee, his heirs and assigns, would not build wharves or bulkheads on the property until permission for that purpose shall be first had from the city.

The department to which this application was made was vested with the exclusive power to grant such permission on behalf of the city. (Consol. Act [Laws of 1882, chap. 410], §§ 711-728.) The use of the property for which permission was desired was entirely consistent with the grant and was not contrary to any of the rights or title reserved by the city in the grant, but was a use which the grantee and his assigns was allowed to make of the property until the city gave notice of the requirement that streets, avenues, bulkheads or wharves should be regulated, paved or erected.

There has been no possession of the plaintiff adverse to the city.

The mere statement of an unfounded claim by one then in lawful possession cannot change the character of his possession nor impose any obligation on the other party to alter his position in relation thereto.

This view of the case makes it unnecessary for us to discuss the other questions presented by counsel, viz., whether a party could gain title to premises reserved for street purposes, by taking possession thereof; whether the provision repealing the portion of the act of 1852 that related to the exterior street contained in chapter 697 of the Laws of 1887 was constitutional; and the effect of the assessment of taxes and the payment thereof by the plaintiff and its predecessor in title. These questions have all been determined adversely to the appellant's contention. (*Mayor, etc.,* v. *Law,* 125 N. Y. 380, 394; 6 N. Y. Supp. 628, 633; *Consolidated Ice Co.* v. *Mayor, etc.,* 166 N. Y. 92, 101.) The plaintiff has shown no right of action as against the city.

Each of the parties hereto has rights in the property, and so far as appears in this action can continue to hold and enjoy the same, and neither one is in position to eject the other therefrom.

The judgment will, therefore, be reversed, with costs to the appellant, and the complaint and the counterclaim dismissed, without costs to either party as against the other.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Judgment reversed, with costs to appellant, and complaint and counterclaim dismissed, without costs to either party as against the other. Order to be settled on notice.