In the Matter of Acquiring Title by the CITY OF NEW YORK to Certain Lands, Lands under Water, Wharfage and Riparian Rights Appurtenant Thereto and Premises in the Block Bounded by First Avenue, East Twenty-ninth Street, East Thirtieth Street and the East River in the Borough of Manhattan, City of New York, Duly Selected as a Site for a Psychopathic Pavilion for the Use of Bellevue Hospital in that City.

In the Matter of the Site for PSYCHOPATHIC PAVILION FOR BELLEVUE HOSPITAL IN BOROUGH OF MANHATTAN, CITY OF NEW YORK.

Supreme Court, New York County, July 28, 1928.

Eminent domain — award — proceedings to acquire property bordering on East river, part of which is under water — property was granted by city to claimant subject to right to compel claimant to construct Avenue A, which was partially under water, and to continue East Twenty-ninth and East Thirtieth streets — claimant not entitled to any award for land lying in bed of Avenue A — claimant not entitled to any award for loss of wharfage and cranage rights — award made for certain fixtures — allowance for depreciation of buildings fixed at thirty per cent — value of corner lots fixed at fifty per cent higher than inside lots — value of key lot, first lot from corner, fixed at ten per cent in addition to value of inside lot — value of tenement houses on side streets fixed at six times rental value and on avenue at eight times rental value.

The property which the city of New York has acquired lies between East Twenty-ninth and East Thirtieth streets and First avenue and the East river. This proceeding is to fix the value of that property. The principal plot is property covering a waterfront block between East Twenty-ninth and East Thirtieth streets and is partially under water. This plot was acquired by the claimant under a deed from the city to claimant's predecessor in title which provided that the purchaser would construct, at his expense, that portion of Avenue A fronting on the property together with portions of East Twenty-ninth and East Thirtieth streets, then under water. The avenue and the streets under water have not been constructed and the claimant seeks to be reimbursed for the loss of the use of the land within the boundary lines of the avenue and the streets under water. All of the claimant's easement in the avenue and the streets under water is the right of access over them but under the grant this could be destroyed by the erection of a public street which would only leave the owner the wharfage and cranage rights upon the margin of Avenue A. If this was done, his access to the waterfront would be cut off, and in order to take advantage of the waterfront it would require an extensive reorganization of claimant's plant.

Under the circumstances, the claimant is not entitled to any award for the loss of the use of the land covered by the avenue and the streets under water.

Likewise, the loss of wharfage and cranage advantages which would result to the claimant is unsubstantial and no award can be made therefor.

The award for machinery in plaintiff's plant may include certain machinery which, though not firmly fixed to the plant, nevertheless is peculiarly adapted thereto.

An award is made, therefore, for a locomotive crane, platform scales and wiring. No award is made for any other personal property.

In considering the value of the buildings, which are fifty years old, an allowance for depreciation of thirty per cent is made.

The value of the land is fixed at the rate of $22,500 for a full lot on First avenue, with an addition of fifty per cent for corner lots and ten per cent for the key lot, which is the lot next adjoining the corner lot, on the avenue.

The value of tenement houses, which are old and obsolete, is determined by multiplying the rental value by six for those tenement houses located on the side streets, and by multiplying the rental value by eight for those tenement houses located on the avenue.

PROCEEDING in condemnation by the city of New York.

*George P. Nicholson, Corporation Counsel [Henry W. Mayo and Josiah A. Stover of counsel], for the city of New York.*

*Eagan & O'Reilly [Dominic L. O'Reilly of counsel], for Damage Parcel No. 1.*

*Talley & Lamb [Charles L. Lamb of counsel], for Damage Parcels Nos. 2, 3, 4, 5, 8 and 11.*

*Skinner & Bermant [J. W. Bermant and Henry Herz of counsel], for Damage Parcels Nos. 6 and 12.*

*Nathan L. Goldstein, for Damage Parcel No. 7.*

*Edward W. Murphy [F. P. O'Connor of counsel], for Damage Parcel No. 9.*

*I. T. Flatto [C. F. Nehrbas of counsel], for Damage Parcels Nos. 10 and 13.*

*Dulon & Roe [Abraham Grometstein of counsel], for mortgagee on Damage Parcel No. 10.*

*Green & Hurd [Daniel S. Murphy of counsel], for leaseholder of Damage Parcel No. 1.*

LEVY, J. This is a proceeding in condemnation to fix the awards to be made to former owners of property located in the borough of Manhattan, city of New York, between East Twenty-ninth street and East Thirtieth street, and First avenue and the East river, which property was acquired by the city in December, 1926, for the construction of a psychopathic pavilion for Bellevue Hospital. There are thirteen parcels involved, ten of which are of the old-fashioned tenement house type, and three occupied by factories or plants. I have viewed the property, as required by section 1445 of the charter of the city of New York, and have carefully analyzed the diversity of opinion presented by the proofs. The testimony involves the usual conflict between experts and presents, on the whole, mere issues of facts, except as to parcel

No. 13. There, in addition, several perplexing questions of law appear. As it is the largest and most valuable parcel in the damage area, it will be considered first. It is property covering the water front block between Twenty-ninth and Thirtieth streets, consisting of 52,889 square feet of upland, 5,160.29 square feet under water between the existing bulkhead and the War Department bulkhead line as fixed prior to the date of title vesting in the city; and 13,428.02 square feet between the United States bulkhead line and the exterior line of the grant. Under deed from the city of New York in 1849 to claimant's predecessor in title, this grant included all the land under water to the westerly line of a theoretical street, then under water and designated on the city map as Avenue A. The purchaser was bound, as part of the consideration for the grant, to construct at his expense that portion of Avenue A fronting on the property, together with portions of Twenty-ninth and Thirtieth streets then under water; and to maintain these streets. The construction, however, was not to be made until it was called for by the city, and up to December 16, 1926, no such demand had been made, for the probable reason that Avenue A lay outside of the War Department bulkhead line, and the filling in of the area necessary to complete the street would indeed infringe upon the paramount rights of the Federal government. Since the vesting of title in the city, the United States bulkhead line has been relocated and Avenue A is now within the area unconditionally owned by the city.

In addition to asking compensation for the upland and the land under water as far as the westerly line of potential Avenue A, claimant asks to be reimbursed for the loss of the use of 15,800 square feet of land in the bed of that avenue. Notwithstanding the fact that its grant did not include that area, it nevertheless claims the right to the use of it until the city should direct the construction of the avenue. It bases its demand upon *Appleby* v. *City of New York* (271 U. S. 364); *Appleby* v. *Delaney* (Id. 403), and *Burns Bros.* v. *City of New York* (178 App. Div. 615; affd., 232 N. Y. 523). In both the *Appleby* and *Burns* cases there was a full grant of waterfront, reserving in the city certain lands under water for purposes of public streets, to be constructed by the grantees at their expense. Here the grant extends only to the westerly line of the potential street, with the same obligation on the grantee's part to construct the portion of it, and includes marginal wharfage and cranage rights in the grantee, as in the other cases.

In the *Burns* case it was held that the owner of the upland and the abutting land under water had an easement upon the land reserved for access to the water. In the *Appleby* cases the ruling was that

the land under water belonged to the grantee, subject to the city's enforcement of its right to demand the construction of public streets in the areas reserved; that the owner could construct platforms over his land to the pier head line established by the War Department; and any occupation of that land by the city for dredging purposes constituted trespass. Whether the right existed in the grantee to construct such platforms over an intervening area reserved for street purposes, is not very clear from the decision. However, drawing inferences most favorable to the claimant here, its largest right in the area of Avenue A and the adjoining cross streets under water, would be an easement of access and light. Such an easement could hardly include the right to erect a platform over areas not belonging to it.

The fact is that the city has been charging other waterfront owners for the privilege of erecting such platforms over its land under water, pursuant to revocable licenses. All that the claimant's easement would substantially cover is the right of access over this area. But under its grant this could be destroyed by the erection of a public street, which would only leave the grantee the privilege of erecting wharves upon the margin of such street. Not only would its access by water from the upland to the waterfront be barred by the intersecting street, but an expensive reorganization of its plant would undoubtedly be necessary, by reason of the fact that its upland property would no longer be on the waterfront. The claimant's easement of access to the water would thus become valueless, and obviously it could not only be destroyed without compensation, but the destruction would entail a large expense on its part for the building and the maintenance of the new streets. Under these circumstances a valuation of four dollars per square foot upon the 15,800 square feet lying in the bed of Avenue A is not only grossly excessive, but absolutely unwarranted. No allowance, therefore, should be made for this whatsoever.

The question remains, however, as to what compensation should be made for the loss of wharfage and cranage advantages which would result to the claimant — after the loss of its easement upon the building of the public street — from its right upon the exterior line of the street. Such rights usually have only a slight value for public renting purposes in view of the very low rates at which the city, where it owns bulkhead rights, leases them on a per diem basis. They can have a substantial value only in connection with upland property to which they are appurtenant. In the instant case they would not be contiguous to such property, by reason of the intervening street, and that fact would have a depreciating

tendency upon the value of the upland. In appraising the wharfage and cranage rights we must, therefore, make allowance for the necessity of the construction of new physical bulkheads to make them available, for the fact that they would no longer be appurtenant to the upland, for the expense to which the claimant would be subjected in the erection and maintenance of the new streets, and for the expense in reorganizing the location of the units of the plant to meet the new waterfront situation. The resulting gain would be easily balanced by the involved outlay. I consider I would be justified in allowing nothing for these wharfage rights. I have endeavored, however, to give the claimant the benefit of the doubt by making no deduction for the theoretical loss in value of the upland by reason of its ceasing to be waterfront property, and by assigning sixty-six and two-thirds per cent of the full value of the upland to the portion under water, instead of the forty per cent estimated by the city. This under water portion, in the event of construction of Avenue A, would have to be filled in, and to that extent would affect its value as compared with the present upland. I cannot accept the opinion of the claimant's expert that the filling in could be accomplished without cost. (See *People ex rel. Lehigh Valley R. Co.* v. *Burke,* 247 N. Y. 227.)

I have also separately allowed the sum of $20,000 for the physical bulkhead in connection with the valuation of the buildings — an amount which, in the estimates of the claimant's experts, has been absorbed in their appraisal of the land.

I, therefore, allow for the 52,889 square feet of upland at $9 a square foot, a total of $476,001, and for 18,588.31 square feet at $6 a square foot, a total of $111,529.86, or a total for the land of $587,530.86. In employing the unit of $9 a square foot, I have adopted the valuation, as if the land were fronting on First avenue, on the basis of $22,500 for a full city lot. I allow for the buildings and structures as follows: Garage, $65,000; ice plant, $60,000; office, $1,000; sheds, $750; one 45-ton coal pocket, $920; three 35-ton coal pockets at $650 each, $1,950; one 75-ton coal pocket, $1,350; one 300-ton coal pocket, $3,800; plank flooring, $900; fence, $1,200; tressle, tracks and ties, $8,500; scale pits, $850; rubble stone retaining wall, $210; cinder fill, $3,500; bulkhead, $20,000; total, $169,930.

The appraisal of the machinery involves certain considerations of law. Nothing, of course, can be allowed for portable things which may be taken away by the claimant. On the other hand, certain equipment which as between landlord and tenant, would properly belong to the latter must be construed as going with the land, within the equitable principles enunciated by the Court of

Appeals in *Jackson* v. *State of New York* (213 N. Y. 34). There it was said (at p. 35): " Condemnation is an enforced sale, and the State stands toward the owner as buyer toward seller. On that basis the rights and duties of each must be determined. It is intolerable that the State, after condemning a factory or warehouse, should surrender to the owner a stock of second-hand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of second-hand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value. An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and so it has frequently been held."

Even though a fixture may be only loosely connected with the freehold, so as to be removable without injury to it, nevertheless if peculiarly adapted to the building in which, or the structure upon which it is located, for these purposes it must be deemed to pass with the land. For this reason, I have permitted an allowance for the locomotive crane, and the award for machinery is, therefore, made as follows: Locomotive crane, $12,308; platform scales, $1,800; wiring, $150; total, $14,258.

The following items are excluded and title to them retained by the claimant, they being those numbered in city's Exhibit 5: Item 2, crawler tread crane; item 3, portable coal screen; item 4, portable coal loading machine; item 6, vertical tubular boiler; item 7, extra parts for portable coal loading machine; item 8, portable scale; item 9, electric motor hoist.

For the ice plant equipment the award is $125,000, excluding movable articles in the engine room, ice tank floor and assortment of fittings, etc., referred to in claimant's Exhibit D-2, title to which will not be deemed to pass. The machinery in the garage I value at $6,003.54, and exclude the following items contained in city's Exhibit 5: Item 17, Worthington pump; item 18, miscellaneous.

The recapitulation of the award for damage parcel No. 13 is: Land, $587,530.86; buildings and structures, $169,930; coal handling machinery, $14,258; ice plant, $125,000; machinery and garage, $6,003.54; total, $902,722.40.

*Damage Parcel No. 6.* This covers premises Nos. 510 to 514 First avenue, consisting of a plot of approximately 74 feet on First avenue, with a depth on East Thirtieth street of 100 feet, and contains 7,406 square feet. It is improved with a three-story

and cellar brick building employed as a sash and door factory. Adopting a valuation of $22,500 per lot on First avenue, and making an allowance of fifty per cent additional for the corner lot and ten per cent for the key lot, I find the total valuation for the land here of $80,154, calculated as follows: 7,406 square feet x $9, $66,654; add valuation for corner, $11,250; add valuation for key lot, $2,250; total, $80,154.

There is a wide divergence between the rival experts as to the value of the buildings. These are not only old but obsolescent, and claimant's attempted depreciation of twelve per cent on structures fifty years old is wide of the mark. After due consideration I find that the allowance for depreciation should be thirty per cent, and I, therefore, fix $49,374.37 as the sound value of the buildings. For machinery I award $32,129.03 and for drying kilns the sum of $3,500.

*Recapitulation.* Land, $80,154; buildings, $49,374.37; machinery, $32,129.03; kilns, $3,500; total, $165,157.40.

*Damage Parcel No. 12.* These premises are Nos. 404 to 410 East Thirtieth street. They are held by the same ownership as parcel No. 6. The property fronts 100 feet on Thirtieth street and is 98 feet 9 inches in depth, containing a total of 9,875 square feet. It is improved with a one-story brick building and lumber sheds. I value the land on the basis of $13,500 per full lot on the side street, or $5.40 per square foot. This gives rise to a valuation for the land of $53,325. The buildings I appraise at $10,000; strangely enough they are valued at a lower figure by the claimant, but somewhat higher by the city. For the kilns I allow $2,500.

*Recapitulation.* Land, $53,325; buildings, $10,000; kilns, $2,500; total, $65,825.

The remaining parcels are tenement property, and the principle upon which their valuation is determined here applies to the one with the same measure of force as to the others. They are parcels Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10 and 11; the first five mentioned fronting on First avenue while the others are located on Twenty-ninth street. I have already indicated that I place a valuation of $22,500 on a full lot on First avenue, and $13,500 on a similar lot on the side streets. The city's experts present figures of $18,000 and $10,000, respectively, while the claimants show estimates of $27,500 and $17,500 in the given situations. The addition of fifty per cent of the value for the corner lot affects only parcel No. 1; while the addition of ten per cent for a key lot or that adjoining the corner affects only parcel No. 2. The valuation of the buildings causes more difficulty. Both sides, in addition to other

estimates, presented physical appraisals based upon reconstruction cost less depreciation. When it is remembered that the buildings are all very old, cold water flats of an obsolete type, it will be seen how inadequate to the situation such a method of valuation is. In the case of the appraisal of the plants covering parcels Nos. 6, 12 and 13 it was the only fair and available method, because these buildings, being suited only for very limited uses, could have only a limited market for renting purposes. Hence the criterion of rental value, so important in appraising tenement property, was lacking. In estimating the latter, the basic method must be a valuation predicated upon its potentiality as an income producer. The ground value being more or less of a constant factor, the difference between the valuation of the entire property on the basis of rental value and the land value will reflect the value of the building. The sound value based upon depreciation of the cost of reproduction will serve only as an incidental check or control upon the result arrived at. In general the fair market value of property on the side streets is six times the rental value. On the avenue the value should be computed on the basis of eight times such rental value. For the corner property a higher multiple would be appropriate. And now we shall apply these rules to the various parcels not already considered.

*Damage Parcel No. 1.* This property is No. 500 First avenue and is situated on the corner of Twenty-ninth street. It is a five-story brick building with stores on the ground floor. The lot fronts twenty-four feet eight and one-quarter inches on First avenue and seventy-five feet on East Twenty-ninth street. The ground area is 1,851.75 square feet. The computation of its land value is as follows:

The lot being only of three-quarter depth, the full unit value of $22,500 per lot on First avenue cannot be adopted, but only seven-eighths of it — not three-fourths, as the rule of proportion would indicate — making a basic valuation of $19,687. To this must be added fifty per cent for its corner location, making a total land value of $29,530. I value the building at $10,500, thus making a total award of $40,030.

*Damage Parcel No. 2.* This property is No. 502 First avenue and has the same frontage and depth as parcel No. 1, and its value must be computed in the same manner. Land value, $19,687, to which is to be added ten per cent for key lot, or $1,969; total land valuation, $21,656. I allow $9,500 for the building and the total award is, therefore, $31,156.

*Damage Parcel No. 3.* This property is No. 504 First avenue and is similar to parcel No. 2 with the same frontage and depth.

The land value is fixed at $19,687 and the value of the building at $10,500, making a total of $30,187.

*Damage Parcel No. 4.* This property is No. 506 First avenue and is similar to parcels Nos. 2 and 3, except that it is a full depth lot. It contains 2,469 square feet and its land value is nine times that figure, or $22,221. The building I value at $10,500, making a total award of $32,721.

*Damage Parcel No. 5.* This property is No. 508 First avenue and the land must be valued on the same principle as that prevailing in parcel No. 4. I, therefore, find the land value to be $22,221, and the building value $8,500, making a total award of $30,721.

*Damage Parcel No. 7.* This property is No. 403 East Twenty-ninth street, situated on a lot twenty-five feet on East Twenty-ninth street and approximately seventy-four feet deep; the total area is 1,851.50 square feet and there is a five-story brick building thereon. The lot is only of three-fourths depth. The valuation on the basis of $5.40 a square foot is not adequate. Thus the valuation ratio between such a lot and a full lot is not three to four but seven to eight. Consequently I take the valuation of the full lot on the basis of $5.40 a square foot as $13,500 and seven-eighths of this as the land value which is fixed at $11,812. The building I value at $10,000, making a total award of $21,812.

*Damage Parcel No. 8.* This property is No. 405 East Twenty-ninth street and contains 2,468.75 square feet. There is a five-story brick building upon the property and also a one-story brick building on the rear of the lot. At $5.40 a square foot the land value is $13,331. I value the building at $9,250, making a total award of $22,581.

*Damage Parcel No. 9.* This property is No. 407 East Twenty-ninth street and the land valuation must be reached by the same method as in parcel No. 8, which is fixed at $13,331 and the building at $9,000, or a total award of $22,331.

*Damage Parcel No. 10.* This property is No. 409 East Twenty-ninth street and is identical with parcel No. 9. The land value is, therefore, fixed at $13,331, the building at $8,125, or a total award of $21,456.

*Damage Parcel No. 11.* This property is No. 411 East Twenty-ninth street and contains an area of 2,468.75 square feet, which multiplied by $5.40 a square foot brings the land valuation to $13,331. The building is valued by the claimant at $8,000 and by the city at $8,125, and I allow the higher valuation to the claimant, thus bringing the award to $21,456.

Let the corporation counsel submit tentative decree accordingly, on notice.