BROWN *et al.* v. OLDHAM, *Appellant.*

Division Two, June 30, 1894.

1. **Deed**: DESCRIPTION OF PREMISES. A deed *held* admissible in evidence against the objection that the description of the premises was so indefinite as to make it void.

2. ———: PROOF OF LOSS: SECONDARY EVIDENCE. The objection that there was no evidence of the loss of a deed, as a foundation for the introduction of a certified copy, can not be taken for the first time on appeal.

3. ———: ———: ———. Under Revised Statutes, 1889, section 4865, an original deed is admissible in evidence without proof of its execution, though not acknowledged according to the law of this state, where it has been on record in the proper county for more than thirty years.

4. ———: PRESUMPTION. A deed may be presumed from long possession and other circumstances which can be accounted for only on the assumption of a conveyance.

*Appeal from Jackson Circuit Court.*—HON. L. H. WATERS, Special Judge.

REVERSED.

*Gates & Wallace* for appellant.

(1) The description of the land in the alleged deed from Jacob Myers to Erastus Brown of the lot of one arpent in the town of New Madrid, county of New Madrid, "confirmed to and in the name of the said Jacob Myers," is too indefinite and uncertain, is void and conveys nothing. *Holme v. Strautman*, 35 Mo.

293; *Campbell v. Johnson*, 44 Mo. 247; *Cass County v. Oldham*, 75 Mo. 50; *City of Jefferson v. Whipple*, 71 Mo. 519; *Fox v. Courtney*, 111 Mo. 147; *Orono v. Veazie*, 61 Maine, 431; 2 Devlin on Deeds, p. 315, secs. 1010, 1011. (2) The certified copy of said alleged deed was not admissible in evidence, having been acknowledged before a justice of the peace in the state of Louisiana by a resident of that state, and no proof having been made or the loss or destruction of the original. *Crispin v. Hannavan*, 72 Mo. 548; Territorial Laws of Missouri, p. 179, sec. 3 (July 7, 1807); Territorial Laws of Missouri, p. 422, secs. 1, 2 (December 23, 1815). (3) The plaintiffs failed to establish by any legal or competent evidence that they are descendants or legal representatives of the said Erastus Brown. The members of the family from whom the witness Corbett received his information, were all living and are his coplaintiffs in this suit. His evidence was not admissible. 1 Wharton on Evidence, sec. 215, p. 220; 1 Greenleaf on Evidence [14 Ed.], sec. 103, p. 139; *White v. Stratton*, 11 Ala. 720. (4) The copy of the will of Erastus Brown, of "Upper Alton in Madison county, state of Illinois," is no evidence that he was the Erastus Brown of the town of Oxford, in Chenango county, and state of New York, mentioned in the deed of Jacob Myers of January 8, 1816. The presumption of identity of person from identity of name does not arise where there is not similarity of residence. Lawson on Presumptive Evidence, rule 57, p. 248; 2 Wharton on Evidence, sec. 1273, p. 477; *Cozzens v. Gillespie*, 4 Mo. 82. (5) After all these years with a claim of title on record for seventy years, open, continuous, notorious and adverse possession under deed for fifty years, and the plaintiffs making no claim and paying no taxes during all this time, the court has the right, and should, if necessary, presume that George

C. Sibley was the owner of certificate number 498, and that all necessary and proper conveyances had been made, either of the certificate, or of the land in New Madrid county, or of the land in controversy to give him a perfect title. *Williams v. Mitchell,* 112 Mo. 300; *Brinley v. Forsythe,* 69 Mo. 176; *Church· v. Bullard,* 2 Metc. (Mass.) 363; *White v. Loring,* 24 Pick. (Mass.) 319; *Valentine v. Piper,* 22 Pick. (Mass.) 85; *Blair v. Marks,* 27 Mo. 579; *Jackson v. Russell,* 4 Wend. 543; *Jackson v. Warford,* 7 Wend. 62; *Briggs v. Prosser,* 14 Wend. 227. (6) The deed from the United States to Archibald Gamble, of September 14, 1837, conveyed whatever legal title the United States had to the land. The solicitor of the treasury was authorized by the laws of congress to make this conveyance. See 4 United States Statutes at Large, p. 414, Act May 29, 1830. If the legal title had passed from the United States, there is no question but what the general statutes of limitations of this state commenced to run in favor of defendants when Jonathan Colcord took possession in 1840. (7) There is at least no doubt but what the equitable title passed from the United States when the survey and plat of location was returned by the surveyor to the recorder of land titles, which was December 2, 1839. The actual exchange of the lands took place at that time. *Lessieur v. Price,* 12 How. (U. S.) 58; *Hot Springs Cases,* 92 (U. S.) 698; *Cabanne v. Lindell,* 12 Mo. 184; *Gray v. Givens,* 26 Mo. 291; *Block v. Morrison,* 112 Mo. 343.

*Bashaw & Isbell* and *E. P. Johnson* for respondents.

(1) The description contained in the deed from Jacob Myers to Erastus Brown, of a one arpent lot in the town of New Madrid, confirmed to and in the name

of Jacob Myers, in the absence of any evidence tend-
ing to show that Jacob Myers had any other one
arpent lot in said town confirmed to him, is perfect.
*Wear v. Bryant*, 5 Mo. 147; s. c., 4 Mo. 106; *Gitt v.
Eppler*, 56 Mo. 138.    (2)    The objection strikes at the
confirmation, but the confirmation would have been
valid without a location, as a survey would have fixed
the location and passed the title.    *United States v.
McLaughlin*, 127 U. S. 428; *Langdeau v. Hanes*, 21
Wall. 521.    (3)    The deeds from Jacob Myers to
Erastus Brown, Erastus Brown to Rufus Easton and
Rufus Easton to Erastus Brown, had all been on record
in New Marid county, where the land was situate
(93 Mo. 211), more than thirty years prior to the
trial, and were admissible in evidence irrespective of
any acknowledgments.    Secs. 4864, 4865, R. S. 1889.
(4) The latter deed contained other land than that
sued for, situate in New Madrid, as appears from both
it and the confirmations, and both the certified copy of
the record of the copy of it in Jackson county and the
New Madrid copy were admissible in evidence.    Secs.
7452, 7453, 7454.    (5) The objection that the original
of this deed was neither in the possession nor in the
control of the respondents, was not made to it, and
this objection was thereby waived by appellant.
*Smiley v. Cockrell*, 92 Mo. 105.    (6)    The foregoing
deeds constituted Erastus Brown and his heirs, the
legal representatives of Jacob Myers to the land sued
for.    *Wear v. Bryant*, 5 Mo. 147; s. c., 4 Mo. 106;
*McCamant v. Patterson*, 39 Mo. 100; *Gibson v. Chouteau*,
39 Mo. 536; *Hogan v. Page*, 2 Wall. 605; *Klenke v.
Koeltze*, 75 Mo. 242; *Carpenter v. Rannells*, 19 Wall.
138; *Block v. Morrison*, 112 Mo. 343. (7) The identity
of the name of Erastus Brown in the deeds and will, is
*prima facie* evidence that they were the same person,
especially, where, as in this case, the documents show

the change of residence of the person named, and the burden of disproving identity was on appellant. *Hoyt v. Davis*, 21 Mo. App. 239; *State v. McGuire*, 87 Mo. 642; *Long v. McDow*, 87 Mo. 197; *Philips v. Evans*, 64 Mo. 23; *State v. Kelso*, 76 Mo. 505; *State v. Moore*, 61 Mo. 276; *Gitt v. Watson*, 18 Mo. 274; *Flournoy v. Warden*, 17 Mo. 435; *Stebbins v. Duncan*, 108 U. S. 32; *Mackay v. Easton*, 19 Wall. 619. (8) The declarations of a deceased relative either by blood or marriage are competent to prove descent. *Childress v. Cutter*, 16 Mo. 24; Greenleaf on Evidence, sec. 103; *Lane v. Lane*, 113 Mo. 504. (9) The legal and equitable title to the land sued for remained in the United States until the seventh of May, 1890, when the patent certificate issued. *Hot Springs Cases*, 92 U. S. 698; *Hammond v. Johnston*, 93 Mo. 211. (10) Sibley could not recite a title into himself as he attempted to do in this case, and which is the sole foundation of his claim. *Joeckel v. Easton*, 11 Mo. 118; *Fine v. Schools*, 30 Mo. 166; *Alexander v. Campbell*, 74 Mo. 142. (11) Neither can a deed to him be presumed, because the case made did not show him either legally or equitably entitled to one, and the presumption could not arise as the case made was not only consistent with the presumption that he was not entitled to one, but tended strongly to establish the fact that he was not entitled to one. Tyler on Ejectment and Adverse Possession, 568, 569; *Jackson v. Manlius*, 2 Wend. 357; *Ricard v. Williams*, 7 Wheat. 59; *Oaksmith v. Johnston*, 92 U. S. 343; *Dunn v. Miller*, 75 Mo. 260; *Williams v. Mitchell*, 112 Mo. 300.

BURGESS, J.—Ejectment for one hundred and twenty acres of land situated in Jackson county, which was located under New Madrid certificate number 498.

About the year 1816 one Jacob Myers claimed before the recorder of land titles who was acting commissioner for the settlement of land claims in the Territory of Missouri, three lots in the town of New Madrid. Plaintiffs claim title as the only heirs of one Erastus Brown, deceased, of Chenango county, state of New York, to whom it is claimed Myers deeded the land in controversy in 1816.

Plaintiffs, to sustain the issues upon their part, read in evidence, over the objections of the defendant, a certified copy from the record of deeds of New Madrid county of what purported to be a deed dated January 8, 1816, from Jacob Myers, of the Parish of St. Jarmany in the State of Louisana to Erastus Brown of Chenango county of the state of New York, and filed for record October 9, 1816, which, among other lands, purported to convey "three lots of ground in the town of New Madrid, in the county of New Madrid, confirmed to and in the name of him, the said Jacob Myers, by the recorder of land titles for the Territory of Missouri; one of which, a lot of two arpents said Jacob Myers claimed under Francis Hudson, one confirmed in his own name and a quantity of land not mentioned, and one other arpent, confirmed to and in the name of said Jacob Myers."

The certificate of acknowledgment is as follows:

"Signed, sealed and acknowledged in the presence of Thos. H. Claburne, Richard S. Sheppard, W. D. Dixon.

"The above deed has been acknowledged to by Jacob Myers, before me, this eighth day of January, 1816.

"LA CRUISE,
"Justice of the Peace."

There was also attached a certificate by the governor of the state of Louisiana that said La Cruise

was a justice of the peace of the Parish of St. Jarmany.

The objection to the introduction of said copy was because the description of the land was too indefinite and because there was no proof of the execution of the deed. Plaintiffs then showed by one of their number, C. C. Corbett, that plaintiffs did not have possession or control of the original deed and by one of their attorneys that he had examined among the papers of the plaintiffs and among the records of New Madrid county and at Jefferson City and did not find any such deed. The deed was then read in evidence and defendants excepted.

Plaintiffs read in evidence a patent from the United States to Jacob Myers for the land sued for, dated May 9, 1890.

On the second of December, 1816, the recorder of land titles issued a New Madrid certificate, number 498, reciting that "a lot of one arpent in the town of New Madrid had been materially injured by earthquakes;" that from the books of his office Jacob Myers appeared to be the owner thereof, and that he or his legal representatives was entitled to locate one hundred and sixty acres, etc.

On April 17, 1820, G. C. Sibley claimed before the surveyor general to be the owner of said certificate number 498 as the legal representative of said Jacob Myers, and the right to locate the land in controversy.

On the twenty-first day of October, 1839, a survey was made of the land which was approved and recorded by the surveyor general on the second day of December, 1839, and on the same day returned to the recorder of land titles. In this survey it is recited that it is made upon the application of said Sibley. After the application of Sibley was made for the location and survey of the land, and before it was made, the land was sold to the United States under an execution as his property,

and that government, by the solicitor of the treasury, conveyed the same to Archibold Gamble and defendant and those under whom he claims have been in the open, notorious, continuous and adverse possession thereof since 1840 claiming the same as their own and paying taxes thereon.

Defendant also read in evidence a deed from Erastus Brown to Rufus Easton, dated May 16, 1816, conveying an undivided half of a lot of one arpent in the town of New Madrid, confirmed to and in the name of Jacob Myers to show outstanding title in Easton as to one half of the land.

The plaintiffs in rebuttal offered in evidence a certified copy of the record of a deed from Rufus Easton to Erastus Brown, dated June 25, 1826, purporting to convey "the following several tracts and all parcels of land lying and being in the State of Missouri, and all the claim, right, title, interest and demand of him, the said Rufus Easton in the same. One tract of land containing six hundred and forty acres located by virtue of a New Madrid certificate in the name of H. J. Masters or his legal representatives; number 206, a tract of six hundred and forty acres located with New Madrid certificate number 100 in the name of Devon or his legal representatives; three tracts of one hundred and sixty acres each in the name of Jacob Myers or his legal representatives, located with New Madrid certificates numbers 497, 498, 499, and a tract of two hundred arpents in the name of James Ashworth, located with New Madrid certificate number 279."

This deed was acknowledged before a justice of the peace in St. Louis county, Missouri, June 25, 1826, and was recorded in New Madrid county, Missouri, February 23, 1849. A certified copy of the record of this deed was recorded in Jackson county, Missouri, Janu-

ary 16, 1892, and the copies offered in evidence were from these records.

There was a judgment in favor of plaintiffs for possession of the land, and $1 damages, from which judgment defendant appeals.

Defendant's first contention is that the description of the land in the deed from Jacob Myers to Erastus Brown of the lot of one arpent in the town of New Madrid is so indefinite and uncertain that the deed is absolutely void. The descriptive words contained in the deed which have any reference to the lot in lieu of which the land in controversy was granted to said Myers are as follows: "Also three lots of ground in the town of New Madrid confirmed to and in the name of him, the said Jacob Myers, by the recorder of land titles for the Territory of Missouri, one of which lots of two arpents the said Jacob Myers claimed under Francis Hudson, one other confirmed in his own name and the quantity of land not mentioned. *And one other of one arpent confirmed to and in the name of said Jacob Myers.*"

The lot in question is the one last described, and we are inclined to hold the descriptive words, when taken in connection with the other recitals in the deed, sufficient to pass by the deed whatever interest said Myers had in said lot at the time of its execution.

It is contended that the court committed error in permitting plaintiffs to read in evidence over the objection of defendant a certified copy of the record of the deed from Jacob Myers to Erastus Brown without first making proof of the loss or destruction of the original. The deed was executed before a justice of the peace, in the state of Louisiana, and not according to the laws of this state. And while it had been on record in the proper county for more than thirty years before the certified copy of the record was offered and read in evi-

dence, no evidence of the loss or destruction of the original was introduced. But no objection was made to the introduction of the certified copy on that ground, and it can not be made for the first time in this court.

With respect of that class of deeds by section 4865, Revised Statutes, 1889, proof of their due execution is not a prerequisite to reading in evidence any certified copies of their record. *Crispen v. Hannavan*, 72 Mo. 548.

The question as to whether the proof was sufficient to show that plaintiffs are the only heirs and legal representatives of Erastus Brown was one of fact to be passed upon by the court sitting as a jury, and we are not prepared to say that its finding upon this question is entirely barren of evidence to support it.

There was no error committed in permitting the copy of the will of Erastus Brown of Upper Alton, in Madison county, state of Illinois, to be read in evidence as it tended to show that he was the same person named in the deed from Jacob Myers to Erastus Brown of Chenango county, New York, the weight to which it was entitled being a question for the determination of the court.

When all the facts in proof as disclosed by the record are taken into consideration we think the presumption should be indulged that George C. Sibley was the owner of certificate number 498, and that all proper and necessary conveyances had been made either of the certificate or of the lot in New Madrid or of the land here sued for by Erastus Brown himself. The indefinite description of the lot in the deed from Myers to Erastus Brown; the possession and claim of ownership by Sibley of New Madrid certificate number 498 as early at least as April, 1820; the fact that it was in his possession and that it was at his request that the land was located and surveyed, its long continued pos-

session and payment of taxes for over fifty years, its sale by the government and purchase under execution against Sibley which was at least some recognition by it of his interest in the land, its subsequent sale by the United States to Archibold Gamble, under whom defendants claim, and the failure of Brown or his legal representatives for so many years to set up any claim to it, certainly justify the presumption that Sibley had acquired the legal title to it by proper conveyances or transfers from Myers or Erastus Brown.

Such presumption has often been indulged when the facts in proof were nothing like so strong as in the case in hand. Thus in *Williams v. Mitchell*, 112 Mo. 300, it was held that, "Where one took possession of land under a title bond, and the maker of the bond having died, the probate court directed his executors to make a deed to the person taking possession of the land or to his order, and such person and those claiming under him remained in actual and continuous possession for more than twenty years without any claim by the maker of the bond or his successors, it will be presumed that the deed was executed in compliance with the order of the probate court." See, also, *Brinley v. Forsythe,* 69 Mo. 176; *Blair v. Marks,* 27 Mo. 579.

In *White v. Loring*, 24 Pick. 319, it is said: "A deed, or any other legal mode of conveyance, may be presumed from long possession and other circumstances, which can be accounted for only on the assumption of a conveyance." To the same effect are *Valentine v. Piper*, 22 Pick. 85; *Church v. Bullard,* 2 Met. (Mass.) 363; *Jackson v. Russell*, 4 Wend. 543; *Jackson v. Warford*, 7 Wend. 62; *Briggs v. Prosser,* 14 Wend. 227.

The law seems to be that such presumptions do **not** arise where all the circumstances are consistent

with the nonexistence of a conveyance. The rule as announced by Tyler on Ejectment and Adverse Enjoyment, 568, 569, is as follows: "Presumptions of grants of land often arise, but never unless the lapse of time be so great as to create a belief that such grants were actually made; or unless the case made shows that the party claiming the presumption was legally or equitably entitled to it. A conveyance will not, in general, be presumed, where the original enjoyment was consistent with the fact of there having been none. * * * Presumptions of grants are founded upon the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They may be encountered by contrary presumptions; and can never fairly arise where all the circumstances are perfectly consistent with the nonexistence of a grant."

There are numerous authorities to the same effect. The claim by Sibley of the ownership of the New Madrid certificate, the long continued occupancy of the land and the payment of taxes thereon by him and those claiming under him are utterly inconsistent with any other theory than that of ownership, and, aside from other facts before mentioned, fully justify what has been said.

From these considerations our conclusion is that the plaintiffs are not entitled to recover and that the judgment should be reversed. It is so ordered. All of this division concur.