In the Matter of the Application of the CITY OF NEW YORK Relative to Acquiring Title to Certain Lands and Premises Situated in the Area Bounded by East One Hundred and Twenty-second Street and First Avenue, East One Hundred and Twenty-fifth Street and Harlem River, in the Borough of Manhattan, City of New York, Duly Selected as a Site by the Triborough Bridge Authority for an Additional Approach to the Triborough Bridge as Approved by the Board of Estimate and Apportionment According to Law (Easterly Portion).

Supreme Court, Special Term, New York County, May 29, 1936.

618

*Paul Windels, Corporation Counsel* [*Charles Bisberg* of counsel], for the city of New York.

*Charles S. Noyes,* for the Randall Dock Company.

*Harold Swain,* for the Rogers Estate and the H. Herman Lumber Company.

*Eagan & O'Reilly* [*Dominick O'Reilly* of counsel], for the Lubin Garage, Inc.

*Talley & Lamb* [*Charles Lamb* of counsel], for the Fordham Triangle Realty Corporation.

*Thomas E. Shea,* for the Kerner Coal Co., Inc., and the Blue Ridge Coal Corporation.

McLaughlin (Charles B.), J. This proceeding has already been divided into two parts. The first part has been decided. The easterly portion is now before the court and consists of damage parcels 9, 9a, 10, 11, 12, 12a, 13, 35, 35a, 35b and 35c. Originally the separation was made because these parcels involve water front, the lands now or formerly under water, together with riparian rights and easements. The legality of this proceeding is attacked. The court has examined carefully all of the claims made in this respect and finds that they are wholly without merit. The proceeding is directly authorized by statute and the taking is pursuant to that statute and the provisions of the Greater New York Charter. Both claimants who challenge the legality of this proceeding are lessees. Their rights are fixed by their leases. On entering into these contracts with the city of New York they saw fit to yield to the municipality an untrammelled power of cancellation. This it was competent for them to do. In the absence of bad faith or other overreaching conduct on its part the city may validly avail itself of the right to exercise this power. (*Miller v. United States*, 233 U. S. 1.) Whether the city terminated these leases rightfully or wrongfully, however, is a matter with which this court has no proper concern. It is beyond its jurisdiction, the limits of which are defined in the statutes governing this proceeding. We may state that the words of Rosenman, J., in *Kenlon Coal Co. v. Triborough Bridge Authority* (N. Y. L. J. Feb. 13, 1935, p. 775, affd., 244 App. Div. 720; appeal dismissed, 268 N. Y. 610) apply with peculiar force to the matter here discussed. We quote:

" The right of cancellation has been used for the purpose of carrying out a public project of inestimable value to the people of the city, approved by the Legislature of the State and by the public authorities of the Federal government.

" The exercise of the unlimited discretion as to termination, vested in the city officials, is, of itself, determinative of this controversy. The rights of the respective parties to the lease were fixed by the contract entered into between them. Apparently the lessee was willing to entrust this power and discretion to the commissioner of docks, subject only to such restraint as the commissioners of the sinking fund might see fit to impose.

" Because of this contractual relationship and the termination of the leasehold, the lessee here is not qualified to raise the contention that the East Side Drive is illegal in that the improvement entails a diversion from uses of commerce and navigation."

The forum of these proceedings is not the place in which their legality may be attacked.

It is best to consider damage parcels 9, 9a, 10 together. In doing so it must be borne in mind that damage parcel 10 is owned by the city of New York. The claims upon the trial seemed complicated by the diverse leasehold and damage claims made concerning these parcels. Damage parcels 9 and 9a are owned by the Fordham Triangle Realty Corporation. Originally these parcels had riparian rights over damage parcel 10. On July 19, 1926, an agreement was entered into between this claimant and the city of New York by which the former ceded to the latter all the riparian rights which were appurtenant to the property and in part consideration received a lease to damage parcel 10 for five years with the privilege of renewals, amounting in all to twenty-five years. This is a lease for twenty-five years. (*Orr* v. *Doubleday, Page & Co.*, 223 N. Y. 334; *Masset* v. *Ruh*, 235 id. 462.) It is true that the claimant gave up its perpetual riparian rights by the terms of this agreement, but it must be remembered that for the period of the ensuing twenty-five years the claimant or its designee had the equivalent of these riparian rights during that term. It could use all the three parcels conjunctively as a water front property or at least so much thereof as it chose. Parts of both damage parcels 9 and 9a were so used by reason of a lease of those portions to the Kerner Coal Co., Inc., together with an agreement between the Kerner Coal Co., Inc. and the city of New York by which, with the consent of the Fordham Triangle Realty Corporation, the Kerner Coal Co., Inc., leased all of damage parcel 10 from the city of New York. In other words, the Fordham Triangle Realty Corporation was able, by reason of its ownership of damage parcels 9 and 9a and its lease with the city of New York, to have a conjunctive use of all of damage parcel 10 and portions of damage parcels 9 and 9a. This right had value irrespective of the cancellation clause contained in the lease. Prior to this condemnation proceeding the chance of cancellation was slight. Many buyers could be found who would take such a chance. The question of cancellation involves the imminence of cancellation. The lack of it resulted in increased value which must be reflected in any award made. Just compensation must be given. Damage parcel 9a is enhanced in value, but not to the extent claimed by the property owner. We must remember that damage parcel 9 was improved throughout its greater portion with an adequate and substantial improvement by the erection of a large garage. That portion is not increased by any conjunctive use because it was not included in such use and the erection of this garage prevented such a use.

Both the Fordham Triangle Realty Corporation and the Kerner Coal Co., Inc., claim an award for the respective improvements

made by each pursuant to the terms of leases made with each of them by the city of New York. This is not the proper forum for such a claim. At common law, when buildings and improvements were erected upon the property of another, they became, in the absence of agreement to the contrary, a part of the land, and title to them vested in the landowner. (*People ex rel. H. R. Day Line* v. *Franck*, 257 N. Y. 69; *People ex rel. International Nav. Co.* v. *Barker*, 153 id. 98; *Kissam* v. *Barclay*, 17 Abb. Pr. 360.) Here, however, we are faced with the proposition that the questions raised with regard to these improvements come within the terms of the leases above mentioned. It would appear, therefore, that there is nothing to condemn. The question is one involving damages for breach of contract and has nothing to do with this condemnation proceeding. The claimants upon this question must have resort to the law courts where their rights may be adjudicated. The courts have uniformly held that while they may condemn anything of value, the statute must contain the matters to be condemned. " That the condemnation statute is the measure of the court's jurisdiction has been long established." (*Matter of Culver Contracting Co.* v. *Humphrey*, 268 N. Y. 26, 34; *Matter of Poughkeepsie Bridge Co.*, 108 id. 483; *Matter of Squire*, 125 id. 131; *Matter of Willcox* [*Fourth Ave. Subway*], 213 id. 218.) There is no doubt that these claimants did spend substantial sums in creating these improvements, but there is no question that the city canceled these leases before any condemnation proceedings were had. That cancellation immediately gave any right of action that the claimants may have had for breach of contract against the city. Of course, the court is not attempting to decide whether either of these claimants has a valid cause of action. That is for another tribunal. What is being determined is the question of jurisdiction of this court. Neither the provisions of the Greater New York Charter nor those of the Triborough Bridge Authority Act (Laws of 1933, chap. 145) give this court any authority or jurisdiction to try a claim for damages for breach of contract. There may be no such damages awarded in this proceeding and both claims are disallowed.

Another claim was made by the Kerner Coal Co., Inc., for the value of the leasehold due to its unexpired term. It is plain that the city of New York reserved to itself the right to cancel this lease, the only provision being that it should pay for the value of the improvements made under certain conditions. We have disposed of that question previously. The court finds that the cancellation clause defeats this claim because the city acted upon it and under the authority given by it properly canceled the lease.

There is no allowance of damages for this claim. All of the claims made by the Kerner Coal Co., Inc., are disallowed *in toto*. The award for land in damage parcels 9 and 9a is at the rate of $6,000 for a standard inside city lot; for the improvements thereon, buildings and parts of buildings, the damage is fixed in the sum of $33,000. For conjunctive use of damage parcel 9a with damage parcel 10 during the term of the lease, the award is fixed at six per cent in addition to the value of the land and improvements.

There is a fixture claim made by Lubin Garage, Inc. Here the word means chattels attached to the realty. There is some conflict as to whether some of these fixtures are removable. The court holds that the steel plates are removable. It would also seem that the air compressors, washing equipment, lockers and partitions are trade fixtures within the meaning of that word. (*Matter of City of New York* [*Allen Street*], 256 N. Y. 236; *Jackson* v. *State*, 213 id. 34.) The award for these fixtures is $955.

There is also a claim by the Lubin Garage, Inc., against the Fordham Triangle Realty Corporation for $1,500 for security on a lease in which Fordham Triangle Realty Corporation is lessor and the assignor of Lubin Garage, Inc., is lessee. It is stated that the claim is admitted by the landlord, but there is no record of that admission. The court has examined the claim. It is allowed and must be carved out of the award to Fordham Triangle Realty Corporation.

Damage parcel 11. This parcel has a peculiar shape because it contains the bed of One Hundred and Twenty-third street east of Pleasant avenue and Pleasant avenue north of One Hundred and Twenty-third street. The city acquired Pleasant avenue by condemnation as far north as One Hundred and Twenty-fourth street and the report was confirmed on September 5, 1884. The city acquired One Hundred and Twenty-third street by condemnation and the report was confirmed December 6, 1837. The upland, therefore, belonged to the city. The tideway also belonged to the city. Any accretion, therefore, belongs to the city. The title to the whole of damage parcel 11 is in the city of New York. (Greater New York Charter, § 83; *Matter of City of New York* [*Main St.*], 216 N. Y. 67; *Matter of City of New York* [*Upper New York Bay*], 246 id. 1.) The award is one dollar to the city. The motion to dismiss is denied. The decision is on the merits.

The Randall Dock Company claims title to the land embraced in damage parcels 12, 12a and 13. The contention is made that there is a chain of title running back to the grant of Gov. John Nichols to the people of the town of Haarlaem, made on or about October 11, 1666. There is another grant from Governor Dongan in 1686, upon which the claimant relies.

Numerous old deeds were offered in evidence, and, while there are some gaps in the chain of title, this court has filled them in by presuming lost deeds. " When a title to land is to be proved, the execution, contents, and loss of the appropriate document of grant may be presumed from certain circumstances; the inference resting on a principle of relevancy already considered * * *. Those circumstances are the long-continued possession of the land (or an appurtenant right) by a party claiming as owner, the non-claim of possible opponents, and such other varying circumstances of the particular case as increase the probability of an origin of grant for the situation as a whole." (Wigmore Ev. [2d ed.] § 2522.) We also find authority for indulging in this presumption in *Ricard* v. *Williams* (20 U. S. [7 Wheat.] 59) where (at p. 109) STORY, J., writes as follows: " Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions." To the same effect are *Gage* v. *Eddy* (179 Ill. 492; 53 N. E. 1008) and *Brown* v. *Oldham* (123 Mo. 621; 27 S. W. 409).

It seems to be established that the claimant owns title to damage parcel 12a, and that the city of New York is the owner of damage parcels 12 and 13. This is quite evident if we consider the deed dated November 1, 1825, from James Bogert, Jr., to Morris Randel. In that instrument the Harlem river at " ordinary high water mark " was the easterly boundary of the property. It is true that the description included " marsh, meadows and soil under water thereto belonging," but that is all included within the limits of the description and does not add any further property to the conveyance. In *People* v. *Page* (39 App. Div. 110) it was held that a description almost identical with the one in issue here did not operate, as against the State, to convey lands under water which did not come within the boundaries of the grant. Similarly, in *Armstrong* v. *DuBois* (90 N. Y. 95) it was held that land could not pass as appurtenant to land. Other cases reaching the same conclusion are *Woodhull* v. *Rosenthal* (61 N. Y. 382); *Harris* v. *Elliott* (10 Pet. 25), and *Matter of N. Y. Cent. R. R. Co.* v. *Buffalo, etc., R. R. Co.* (49 Barb. 501). The description in this deed shows clearly that Morris Randel owned to the ordinary high-water line only.

A consideration of the documentary evidence in this case leads to the conclusion that the ordinary high-water line was accurately fixed by the Randel map of 1818. The property owner seeks to impeach the accuracy of this map by producing a map named the so-called " Bridges Map " which was made in 1826. This

map shows land further offshore than that shown in the map of 1818. The shape of the shore line is also different in that map. Were this all there was to the documentary proof, there might be some question as to the accuracy of the Randel map of 1818. However, we find that the subsequent maps, including the Southard map, filed on September 10, 1859, show the high-water line to have receded. Various other maps filed by predecessors in title of the present claim show that the high-water line was as set forth in the Randel map of 1818.

There is but one conclusion, and that is that the high-water line was properly fixed by this map of 1818, and that that line was acquiesced in by many of the predecessors in interest in this title to the present claimant. It is incredible to consider that the shore line would change at the time the Bridges map was made, and then recede to the Randel 1818 line, and further when these other maps were made.

We may here add that there is no proof that the city of New York ever occupied damage parcel 12a.

In addition to the above, the claimants also claim title to the northerly half of this block by virtue of a deed from Morris Randel and Betsy Ann, his wife, to William Kyle, dated November 11, 1863. So far as lot 478 is concerned, which comprises parcel 12a, he had already deeded this to somebody else, and so it is not any proof of title as to that parcel.

A careful review of this chain of title reveals that the subsequent grantors conveyed property, title to which they never had. One Josephine Dwight conveyed to Byron Wolverton on December 9, 1909, all the property south of One Hundred and Twenty-fourth street and north of One Hundred and Twenty-third street, and between the westerly line of Pleasant avenue and the exterior of the bulkhead line of the Harlem river. There is nothing in this record which establishes any title to that property in Josephine Dwight. The title is not in Byron Wolverton, nor in any of his successors. The title to this property is in the city of New York. The city of New York obtained title to the lands now comprising parcels 12 and 13 from an original grant of Governor Dongan to the city of New York, granting all the lands between high- and low-water mark around Manhattan island, which grant is commonly designated as the Dongan Charter of 1686. This grant was confirmed by the Montgomerie Charter, granted in 1730, and also confirmed by chapter 584 of the Colonial Laws, passed on October 14, 1732.

The courts of this State have held that the city is entitled to all land between high- and low-water marks. (*Mayor* v. *Hart*, 95 N. Y. 443; *Sage* v. *Mayor*, 154 id. 61; *Furman* v. *Mayor*, 10 id. 567; *Langdon* v. *Mayor*, 93 id. 129.) All this land was comprised in these two damage parcels, 12 and 13, and consisted of land between the original ordinary high-water mark and the low-water mark, and, therefore, belongs to the city of New York, and they have never granted title to this property to any one.

The question remains as to whether there shall be any damages for riparian rights appurtenant to damage parcel 12a. Ordinarily, the owner of this parcel would be entitled to compensation for such rights in the condemnation proceeding, were it not for the fact that there has been erected a marginal street running from the bulkhead back, for the promotion of commerce and navigation. A marginal wharf or street must be distinguished from the public streets. The distinction is found in the fact that such a marginal street is under the control of the commissioner of docks, after approval thereof by the commissioners of the sinking fund of the city of New York. (*Peterson* v. *City of New York*, 260 N. Y. 156.) Section 535 of the Greater New York Charter tends to emphasize this distinction. That section is as follows: " The term streets as used in this title shall not be deemed to include such macadamized streets as are within any park or are under the control or management of the department of parks, nor such wharves, piers and bulkheads or slips and parts of streets and places as are by law committed to the custody and control of the department of docks and ferries." For practical purposes, therefore, a marginal street is simply a dock or wharf used in conjunction with, and in furtherance of, commerce and navigation. (Greater New York Charter, § 819-a.) All business done on such wharf or marginal street must be in connection with the loading and unloading of vessels at the piers, docks and bulkheads thereof. (*Vilias* v. *Featherson*, 94 App. Div. 259; *Swindell* v. *N. Y. & C. S. S. Co.*, 98 Misc. 350.)

On October 13, 1887, the dock department, pursuant to chapter 697 of the Laws of 1887, laid out a plan showing a marginal street, wharf or place, 125 feet in width, extending inward from the bulk-head line as established by the dock department. This line was subsequently confirmed by the Secretary of War in 1890. According to the testimony in this case, the marginal street or wharf was constructed and covers nearly half of a block of the property thus claimed by the Randall Dock Company. This testimony also shows that there was a bulkhead erected along the bulkhead line from One Hundred and Twenty-third street to One Hundred and

Twenty-fourth street, and that this bulkhead and wharf and marginal street were used in the interest of commerce and navigation, in that merchandise and goods were carried over from and to boats at that point. The construction of this marginal street, wharf or place destroyed any riparian rights that the owner of the upland of parcel 12a had. (*Sage* v. *Mayor, supra; Burns Bros.* v. *City of New York,* 178 App. Div. 615; affd., without opinion, 232 N. Y. 523; *Hinkley* v. *State of New York,* 234 id. 309; *Matter of City of New York [Jamaica Bay],* 256 id. 382; *Matter of City of New York [The Speedway],* 168 id. 134.)

The court finds on the evidence that up to 1915 all the water was not filled in out to the bulkhead line. The only case cited (or found by the court) which holds that where the tideway is in different ownership from the upland and is filled in, the fill belongs to the owner of the upland, is *Steers* v. *City of Brooklyn* (101 N. Y. 51). In that case the plaintiff was suing to compel the defendant, the city of Brooklyn, to surrender a pier wrongfully built by the defendant in front of the plaintiff's property and also to compel the defendant to account for wharfage. Later cases (*Sage* v. *Mayor, supra,* and *Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 144 N. Y. 75), however, point out substantial distinctions which may be drawn between the *Steers* case and the matter now before us. In the *Sage Case* (*supra*) we find the following: " It is claimed that *Steers* v. *City of Brooklyn* (101 N. Y. 51) is in conflict with these views. In that case, however, the city of Brooklyn had wrongfully built a pier in front of plaintiff's premises, and it was held that the pier by accretion became added to the plaintiff's land in so far as it was in front thereof. Steers owned to the water line, and the city of Brooklyn, which had no ownership in the shore waters as they had never been conveyed to it, had no right to build a pier in front of his premises. It was, therefore, a trespasser in thus building the pier and shutting him off from the water privileges which before he had enjoyed as an easement to his bulkhead and which he had a right to use as against the city of Brooklyn and all the world except the State, or its lawful grantee, acting for the public. An increase owing to the action of a wrongdoer is an exception to the doctrine that to gain title by accretion the growth must be by imperceptible degrees and through natural causes. The *Steers* case stands upon that exception and has no application to the case now before us."

In *Saunders* v. *N. Y. C. & H. R. R. R. Co.* (*supra*) the court makes the following comment upon the *Steers* case: " The case of *Steers* v. *City of Brooklyn* (101 N. Y. 51) does not, I think, sustain the plaintiffs' contention. When the opinion in that case is examined in con-

nection with the facts in the record and with the statutes under which the plaintiff claimed, it will be seen that the defendant simply built a pier upon lands, the title to which was in the plaintiff, and the decision was to the effect that the pier thus built became the property of the plaintiff upon whose lands it was located."

To vest title by accretion in an upland owner, the accretion must take place by imperceptible degrees. (*Mulry* v. *Norton*, 100 N. Y. 424.) It must originate from natural causes. (*Sage* v. *Mayor*, *supra*.) The filling in of land under water does not constitute such land an accretion. (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75.) In *Tiffany* v. *Town of Oyster Bay* (234 N. Y. 15) it was held that fill did not change the title of land under water and that in a proper case the land remained water. In that case the upland owner made the fill. In *Gucker* v. *Town of Huntington* (268 N. Y. 43) the town made the fill. The decision was that the fill did not change the title to the land under water and the filled in land was subject to riparian rights. Analysis of that case shows the court to be unanimous on this point. The four to three decision was on another point. The decision of this court is that (except for what follows) the owner of damage parcel 12a has riparian rights between the lines drawn perpendicular to the hypotenuse of damage parcel 12a at its extremities. But, *first*, it has lost those rights by adverse possession starting in 1880. *Second*, the city of New York, for the benefit of navigation, established a marginal street. Whatever became of that street elsewhere, in this locality, starting about 1915, the marginal street was a real marginal street, bulkheaded and used for purposes of navigation by the dock department. It was never treated as a highway and it always remained under the dock department. Such a street cuts off riparian rights. (*Sage* v. *Mayor, supra*.)

The court has not overlooked *Burns Bros.* v. *City of New York* (*supra*). That case shows that the streets there involved had never been used for benefit of navigation. It is clear that Exterior street in this locus has been so used.

The award for damage parcel 12a is fixed in the sum of four dollars and fifty cents a square foot on account of the double frontage and corner control. Let the corporation counsel compute.

We now come to the consideration of damage parcels 35, 35a, 35b and 35c. Ownership of all of these parcels is claimed by one Rogers. At the time title vested in the city (in this proceeding) the premises were occupied by a tenant (H. Herrmann Lumber Company), whose claim for compensation is also before the court. Title will first be discussed.

The parcels fall into three groups: *First*, damage parcel 35b which is awarded to claimant; *second*, damage parcels 35a and 35c; *third*, damage parcel 35. The claimant's title to any of this property rests on a water grant from the city to one Murphy, dated 1867. That grant contained exceptions. Attached to it is a map showing the extent of the grant and the extent of the exceptions, which are also described in the words of the grant, which includes all the land under water between the high-water line (as mentioned in the grant) and the bulkhead line, and between the center lines of One Hundred and Twenty-fourth street and One Hundred and Twenty-fifth street, with the following exception: " Saving and reserving out of the hereby granted premises, so much thereof as may form part of any street or streets, avenue or avenues, that may now or hereafter be designated or laid out through said premises according to law, for the uses and purposes of public streets, avenues and highways as hereinafter mentioned." Within the area of this water grant, as pictured on the map attached thereto, we find designated the lines of two streets running north and south (Avenue A and Exterior street) and the east and west-bound One Hundred and Twenty-fourth and One Hundred and Twenty-fifth streets.

In *Consolidated Ice Co.* v. *Mayor* (166 N. Y. 92) a strikingly similar clause was before the Court of Appeals. In that case (at p. 99) the court said: " By this saving clause the city did not undertake to reserve to itself something out of the granted premises which had no existence before, such as rent or an easement, but instead to except from the premises conveyed a portion thereof, which it proposed to use for a specified purpose. It was land under water that it proposed to except out of the lands conveyed, and the representatives of the city, being apparently in doubt as to whether a street had been regularly laid out or not, safeguarded the exception by saving and reserving from the premises granted ' so much thereof as may form any part of any street or streets, avenue or avenues, that may now or hereafter be assigned, designated or laid out through said premises according to law for the uses and purposes of public streets, avenues and highways as hereinafter mentioned, or which are now in use as such.' "

Now as to damage parcels 35a and 35c, they lie either in the bed of Avenue A or Exterior street, as they were assigned and designated, though not laid out or in use, at the time of the grant. On the authority of *Consolidated Ice Co.* v. *Mayor* (166 N. Y. 92), the court awards damage parcels 35a and 35c to the city. The following authorities support that decision: *Whitman* v. *City of New York* (85 App. Div. 468); *Knickerbocker Ice Co.* v. *42nd St.*

*R. R. Co.* (Id. 530; affd., 176 N. Y. 408); *Matter of City of New York [West 151st St.]* (149 App. Div. 55); *Langdon* v. *Mayor* (93 N. Y. 129, 149).

As to damage parcel 35, it may be stated that none of this land lies in the bed of Avenue A. None of it lies in the bed of Exterior street as it was designated and assigned at the time of the grant, when Exterior street as designated had a width of seventy feet. The westerly line of the original Exterior street cuts the prolonged lot line just north of parcel 35. Parcel 35 has a frontage on Avenue A. In 1887 the city included the entire width of the original Exterior street in a new " marginal street " one hundred and twenty-five feet wide. The westerly fifty-five feet of that new street cut off a large triangle from damage parcel 35. If by the exception the city " excepted " any street " hereafter designated " and this fifty-five feet is included in that exception, then that triangle must be awarded to the city. If the grant had " reserved " in contradistinction to " excepted," the decision would be simpler, for a reservation deals avowedly with something not *in esse* (at the time of the grant). It reserves something newly created out of or attaching to the land granted. " But an exception is always of a part of the thing granted, or out of the general words and description in the grant." (4 Kent Comm. 468; *Gould* v. *Glass,* 19 Barb. 179, 192; *Beardslee* v. *New Berlin L. & P. Co.,* 207 N. Y. 34, 39, 40.) Now it may be argued (and there is ample authority for the proposition) that an exception is not valid unless it is definite. As stated above, an exception must be a part of a thing *in esse.* (See *Attorney-General* v. *Farmen,* 2 Lev. 171 [1676]; 83 Eng. Rep. 503; *Bell* v. *City of New York,* 77 App. Div. 437, 451; *Thompson* v. *Gregory,* 4 Johns. 81; *Flaherty* v. *Cary,* 62 App. Div. 116; *Jackson* v. *Hudson,* 3 Johns. 375; *Shinnecock Hills & Peconic Bay Realty Co.* v. *Aldrich,* 132 App. Div. 118; affd., 200 N. Y. 533.) Prior to 1873 it lay within the power of the city to convey lands under water in fee simple. That was done in this grant. The exception (in so far as it relates to Marginal street) was necessarily indefinite at the time of the grant. So, if the question be decided on that point, damage parcel 35 must be entirely awarded to the claimant. But it may be argued to the contrary that *Consolidated Ice Co.* v. *Mayor (supra)* has settled the law in this State that an exception as to future streets is valid. All the cases concerning indefiniteness hark back to *Attorney-General* v. *Farmen (supra),* which did not involve an exception. It concerned a grant of public lands, the extent of which was to be fixed by the amount of shore left by reliction, when the sea receded. It may very well be that the cause of that decision was a reluctance to allow

a grant of the public domain measured by any such contingency. If so, that cause would work in favor of this exception, which prevents a grant of the public lands. It must be assumed that the grantee paid less for the grant with the exception (both definite and indefinite) than he would have paid without the exception. So, if the grantee gets what the parties intended he should not get, the public domain is being granted as a gift. If we follow that line of reasoning, the triangle cut out of damage parcel 35 by the new marginal street must be awarded to the city.

There is, however, a third position which may be taken by the claimant. What was excepted was land for streets and highways. When a piece of land is definitely excepted, it makes no difference that it is not applied to a specified use by the owner who retains it. It does not pass. If the grantee has any rights, he can enforce them in a proper forum, but under the grant he cannot seize the excepted land. Assuming, however, that the city has excepted land to be later determined, we must inquire what are the limits of that determination. This grant expressly says that all land excepted is to be land for purposes of public highways. Therefore, the city cannot enlarge the exception to any future streets which it will not devote to the purpose of public highways. The marginal street (one hundred and twenty-five feet wide) is not a public highway. It is a wharf. The city under the statutes can (within the limits prescribed) exclude the public from it. Exterior street (seventy feet wide) was always ample for a highway. The city has converted it into a wharf. If the claimant here has any grievance because of that, this is not the forum for relief. The fifty-five feet added to make the new wharf was never intended as a public highway. It is frankly a wharf, or more precisely stated, the westerly part of the wharf. The city never excepted any lands for wharves from this grant. So on this contention the whole of damage parcel 35 is awarded to claimant. The court prefers to rest the decision on this last ground, not on the theory of indefiniteness of the exception, but upon the ground that definitely the westerly fifty-five feet of marginal street was never excepted.

The city did not lose any part of these excepted streets by adverse possession. (*Mayor* v. *Law*, 125 N. Y. 380, 394; *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo*, 200 id. 113.) Chapter 335 of the Laws of 1873 forbade the alienation of the city's waterfront. This same prohibition is also found in the New York City Charter of 1897, and today we find its counterpart in section 71 of the Greater New York Charter. The intent of the legislative act of 1873 may not be thwarted by a claim of adverse possession. (*Matter*

*of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 140.) The whole intent of the grant to Murphy with regard to Avenue A and Exterior street was that these streets were to be *forever* excepted. A holding, therefore, that a successor to Murphy could, under any circumstances, acquire adverse possession as to these streets would be repugnant to the intention of the original parties as expressed in the plain language of the exception clause.

The designation of Avenue A and Exterior street does not deprive the owner of parcels 35 and 35b of their riparian rights. Any contrary conclusion would be repugnant to the grant. There can be no question but that proper allowance must be made in this proceeding not only for riparian rights as such, but also for those rights commonly known as " bulkhead rights." While there may exist cases in which both of these classes of rights appear to merge or become very difficult of separation, nevertheless the trend of the decisions is toward separation. Bulkhead rights, so called, are those rights granted to a person or corporation to collect wharfage, cranage and other fees or emoluments incident to commerce at the waterfront. Riparian rights, technically at least, do not include bulkhead rights. In order to obtain a grant of bulkhead rights, separate application must be made to the proper authorities. (*Matter of City of New York* [*15th & 18th Streets*], 56 Misc. 306, 310; *Wiswall* v. *Hall*, 3 Paige, 313; *Walsh* v. *N. Y. Floating Dry Dock Co.*, 77 N. Y. 448.)

There is presented here the question of consequential damage to the portion of the claimant's land located on One Hundred and Twenty-fourth street. Such damages may be allowed, but they are confined to the portion of the tract which is used for the same purposes.

" Where the land taken is a portion of a greater tract which is used for one purpose, and the part taken and the buildings upon it are necessary for the purposes to which the whole tract has been devoted, the owner is entitled, not only to the value of the land actually taken, but to the difference between the value of the plant as it was before the land was taken and the value as it is after the taking." (*Matter of Mayor*, 39 App. Div. 589, 592.)

In the instant case the lumber mill and shed were used for the same purpose as were damage parcels 35 and 35b, and there must be allowed consequential damages for the mill property on East One Hundred and Twenty-fourth street. The unit of value for damage parcels 35 and 35b is fixed at $8,500 for a standard inside city lot; for bulkhead rights there is to be added an amount at the rate of $225 a lineal foot. For the physical bulkhead there is awarded the sum of $5,000; for buildings and improvements, the

sum of $5,000. Consequential damage to the mill on tax lot 13, not taken, because of its conjunctive use is fixed in the sum of $4,000.

The H. Herrmann Lumber Company has made a claim for fixtures. These fixtures were also in the One Hundred and Twenty-fourth street property. The failure of this tenant to file a proper claim within the provisions of section 1445 of the Greater New York Charter does not bar its assertion of that claim. It had the right to file a proper claim at any time during the course of the proceeding. The amended claim is received in evidence. The city would pay for these fixtures because it had taken title to them. The acts of the claimant show that it contended that it had title to them. Certainly the claimant exercised full dominion over the machinery after the taking. It cannot take the inconsistent position of compelling the city to pay for property the latter never owned.

There is not a scintilla of a taking by the city of this machinery. Then, too, the exercise of dominion over this machinery by the tenant herein indicates, on his part, an election to treat it as personalty. Having made this election he is thereby estopped, as against the condemning power, from asserting a claim that it is realty and receiving compensation for it.

As heretofore stated, there will be an allowance made for consequential damages with regard to the use to which these parcels were put. The city's contention that the owner has lost the right to such consequential damages by the unlawful removal of the fixtures is without point. The instant that title vested in the city in this proceeding, the right of the claimant to consequential damages sprang into existence and she was not divested thereof by the subsequent wrongful appropriation of the fixtures. For fixtures taken in eminent domain proceedings a separate allowance is made. This is distinct and apart from the allowance made for consequential damages, which is based upon entirely dissimilar considerations and has to do, in this particular case, with the effect of a partial severance upon a whole plant, in working condition.

The city seeks also to defeat the fixture claim of the owner as to these parcels upon the ground of non-compliance with section 1445 of the Greater New York Charter, as amended by chapter 387 of the Laws of 1932. This statute requires the filing of a verified claim " with an inventory or itemized statement of the fixtures " for which damages are now claimed. It is true that the purpose of this statute was to prevent surprise and the elimination of hardship on the part of the city in defending itself against unjust claims. But the intent of the Legislature in enacting this statute was that it was to operate as a method of procedure or as a state-

ment of what pleading the claimant must file in order to apprise the city of his claim. A statute cannot be made the instrument to violate the spirit of the constitutional requirement of just compensation. The notice of claim, therefore, provided for in the statute is in the nature of a pleading. Pleadings are always subject to amendment. The discretion of the Supreme Court to correct mistakes, not jurisdictional, may not be taken away, at least until the Legislature specifically so states in the law itself. The court should allow the correction of mistakes in such a paper. (*People ex rel. Durham Realty Corp.* v. *Cantor*, 234 N. Y. 507, revg. 201 App. Div. 834.) It should also be noted that there appears to be no affirmative statement in this statute prohibiting the considering of claims which are not filed within the specified time for the filing thereof. Nor is there any penalty prescribed for a failure so to present a claim. (See *Mark* v. *State*, 97 N. Y. 572; *Benedict* v. *State*, 120 id. 228; *Yaw* v. *State*, 127 id. 190.) A party has a right to be heard in defense of his property rights. (*Londoner* v. *Denver*, 210 U. S. 373; *Appleton* v. *Newton*, 178 Mass. 276, 281; 59 N. E. 648.) For the foregoing reasons, the contention of the city is not maintainable, but the fixture claim is disallowed for the reason heretofore stated.

The corporation counsel is directed to prepare tentative decree accordingly. The computations may be made in accordance with the foregoing memorandum.