Bebnard Ryan, P. J.
Claimant corporation is engaged in the outdoor advertising business in the State of New York particularly in the western section, in the City of Buffalo and the nearby area. Some of its signboards are supported by uprights embedded in concrete set in the ground. Others are attached to roofs and to walls of buildings. In all instances the signboards are maintained by virtue of contractual agreements made with the owners of land upon which the signboards stand. The agreements are for the most part standard in form designating the owner of the real property as “landlord” and Whitmier & Ferris Co., Inc. as “ tenant.” They provide for a certain stipulated yearly rental for a term of years and are renewable upon the same terms. Some of them are labeled “ Ground Lease.” These contain the following language: “ The Tenant is hereby granted the right to extend this lease for a further period equal to the term hereof, at the same rental and upon the same terms, *71 by mailing to the Landlord at the address given below (or to such other address as the Landlord may have specified in writing) at least five days prior to the expiration of the term hereof, the check of the Tenant in payment of the first installment of rent for such extended period.
1 ‘ The Tenant shall have the right to erect, place and maintain advertising sign structures and equipment therefor on the leased premises, and post, paint, illuminate and maintain advertisements on such structures. All structures, equipment and materials placed upon the said premises by the Lessee shall always remain the personal property of, and may be removed by the Tenant at any time prior to or within a reasonable time after the expiration of the term hereof or any extension thereof.
“ If at any time the signs or structures of the Tenant on the leased premises shall be or become entirely or partially obscured or destroyed; or the value of the said location for advertising purposes shall be or become diminished; or the Tenant be prevented by any present or future law or ordinance, or by the authorities having jurisdiction, from obtaining any necessary permit, or from constructing or maintaining on said premises such signs, then and in any such event, at the option of the Tenant, this lease shall terminate on fifteen (15) days’ notice in writing to the Landlord, by mail addressed to him at his address shown below, or such other address as the Landlord may hereafter in writing specify and Landlord agrees thereupon to return to the Tenant any rent paid in advance for the unexpired term.
“ The Landlord represents and warrants that he is the owner of the premises above described and has authority to make this lease and covenants that he will not permit any adjoining premises, owned or controlled by him, to be used for advertising purposes or permit Tenant’s signs to be obstructed.
“ The Landlord reserves the right to terminate this lease by giving thirty days’ notice in writing by mail to the Tenant if property is sold or in the event that the Landlord improves the leased premises by erecting a permanent, substantial building thereon, requiring removal of the Tenant’s sign structures, and with such notice refunding to the Tenant pro rata any rent paid in advance of the expiration date for the unexpired term. This lease shall inure to the benefit of and be binding upon the personal representatives, successors and assigns of the parties hereto. ’ ’
The State of New York appropriated various parcels of land upon which structures owned by the claimant corporation had been placed pursuant to such agreements. Appropriation maps were prepared, filed in the County Clerk’s office and served *72 upon the fee owners, the same persons described in the agreements with this claimant as landlords. As originally pleaded claimant alleges that 11 this claim is for the permanent appropriation of realty and/or permanent fixtures consisting of permanent signs attached therewith and a part thereof ’ ’ and asks damages for the total value of 35 signs in the amount of $29,050 and for loss of advertising contracts and related business in the additional amount of $8,500. However, claimant has abandoned any demand for recovery on the basis of the State’s interference with its advertising contracts or for costs of removal of the signs. It does demand the replacement value of each sign as the fair and reasonable market value of its leasehold interest.
As pleaded the 35 signs were at 17 different locations. However, at the opening of the trial it was stipulated by counsel that an order of severance be entered and under this arrangement we are now concerned with only 9 signs at 4 locations. Detailed descriptions of the signs appear in the record of the trial, and are recited in the requests to find and in our formal findings of fact. For convenience we shall refer to the locations in the name of the fee owner. With respect to Ivancic there was no service of the appropriation map upon this claimant. The one sign was removed by claimant at the request of the State’s contractor subsequent to the filing of the map. The map does not show the existence of the sign. With respect to Kahle claimant removed the two signs at the request of the Niagara Mohawk Power Corporation prior to the filing of the map and prior to the service of notice of appropriation upon the claimant. The map shows the existence of the signs. With respect to Jepson claimant removed the four signs at the request of the State’s construction contractor prior to the filing of the map and prior to the service of notice of appropriation upon the claimant. The map does not show the existence of the signs. With respect to Fitzpatrick there was no service of the appropriation map upon the claimant. The two signs were removed by the claimant at the request of the State’s contractor prior to the filing of the map in the County Clerk’s office. The map shows the existence of the signs. To sum up: In two instances claimant was served with a copy of the notice of appropriation; in two instances the location of the signs was shown on the appropriation map; in all instances claimant removed the signs.
We are faced first with a question of fact. We are aware that 1 ‘ An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and so it has frequently been held ” said Judge Cardozo, citing authorities. (Jackson v. State *73 of New York, 213 N. Y. 34, 36 [1914].) Concededly, here, there is no qualified appropriation. However, Judge Cardozo’s sense of shock at the intolerable possibility that “ the State, after condemning a factory or warehouse, should surrender to the owner a stock of second-hand machinery and in so doing discharge the full measure of its duty ” (p. 35) did not change the rule that each case must be governed by its own facts nor that the use by parties of the words “ let ” or “ landlord ” or, as in this case, “tenant” is not conclusive. (United Merchants Realty & Improvement Co. v. New York Hippodrome, 133 App. Div. 582 [1909], affd. 201 N. Y. 601.)
As in the last-cited ease, it seems to us that here essential elements of a lease of real property are lacking and that the claimant required no right of possession but simply a right to erect advertising signs upon the lands now appropriated by the State. While it cannot be questioned that as between the claimant and the owners of the land the signs were to remain claimant’s personal property, there is on the other hand no basis for a finding that the signs were so annexed that they had become part of the real property.
For the most part all of claimant’s signs were of the same size and shape. The parts of the metal signs were interchangeable and some of them were prefabricated. They were erected piece by piece and were dismantled the same way. When taken down they were returned to stock piles in the claimant’s shop. Ground supports for the signs, if metal, were burned off. If wood the timbers were cut down to ground level. Metal salvage was practically 100%. Of all the signs hereinabove referred to only three were built with frames of wood (two Kahle, one Fitzpatrick) and those had steel facings. Claimant had gradually discontinued the use of wood for signs and only the facings thereof were salvaged as a matter of practice. There was some loss in the scrapping of wooden frames and supports.
The situation is unlike that which existed in the case of Matter of City of New York (Allen St.) (256 N. Y. 236 [1931]). There is in this record no proof upon which this court can make a finding that the signs enhanced the value of the land. Indeed the expert on values, a witness called by the claimant, testified that the damage suffered was the replacement value of the sign and that the value of the leasehold was the value of the sign itself. In each instance claimant has requested us so to find. The same witness also testified that the contract under which the sign was placed would be an incumbrance and would reduce the value of the fee except that the owner was protected by the 30-day cancellation clause.
*74 We are not unmindful that in deciding the case of Stein Brewery v. State of New York (200 Misc. 424) we followed Matter of City of New York (Allen St.) as an authority for making an award upon the facts then before us. One of those facts was that the parties to that litigation regarded the signs as part of the real property. Moreover, in the Stein case the Attorney-General submitted his proof of damages on a theory which negatived the suggestion that the sign had been treated by all concerned as personal property. The position of the defense here is quite different and is, we believe, the correct one. We therefore adopt its requested finding that the signs constituted movable and replaceable items of equipment used in the conduct of claimant’s business and possessing and retaining the characteristics of personal property. Upon that holding the claim must be dismissed.
The Attorney-General, as a further defense, raises the question of estoppel by virtue of the fact that in every instance the claimant took possession of the signs. It would appear that this was an election to treat them as personal property. (Matter of City of New York [Triborough Bridge], 159 Misc. 617, 633 [1936], affd. 257 App. Div. 940, motion for leave to appeal denied 282 N. Y. 808.) Without further discussion we believe that the claimant’s act of talcing possession of them supports our finding as to the nature of the signs. We believe the defense has merit and we adopt the requested findings on this point although, perhaps, it is unnecessary to do so.
(Supplemental opinion, November 16, 1959.)
Reasons for dismissing the three above-entitled claims are set forth in our opinion in claim filed by the same claimant and numbered 35189. Separate findings of fact and conclusions of law in each of the above-entitled claims are filed herewith.
It may be noted that certain requests to find submitted by the Attorney-General have been adopted as conclusions of law in each of these claims. In Claim No. 35189 the Attorney-General’s requested finding of fact No. 28 was adopted as a finding of fact. Requests in similar language in the three above-entitled claims were adopted as conclusions of law, which we think is the proper category of such requests.