◼ In the Matter of WASHINGTON MUTUAL, F.A., as Successor in Interest to HOME SAVINGS OF AMERICA, FSB, as Successor in Interest to BOWERY SAVINGS BANK, Appellant, v METROPOLITAN TRANSPORTATION AUTHORITY, Respondent. [792 NYS2d 414]—

Judgment, Supreme Court, New York County (Martin Schoenfeld, J.), entered August 27, 2003, in a condemnation proceeding, insofar as appealed from as limited by the briefs, valuing a portion of parcel 6A at $25 per square foot as "back

office space" rather than at $100 per square foot as retail space, unanimously affirmed, without costs.

The parcel in question was part of the basement of a one-story bank building adjacent to Pennsylvania Station on the west side of Seventh Avenue between West 33rd and West 34th Streets owned by claimant-appellant's predecessor in interest, the Bowery Savings Bank. Since September 12, 1968, the bank leased from the Penn Central Company, the Metropolitan Transportation Authority's (MTA) predecessor in interest, certain space (designated parcel 6B in this proceeding) on the concourse level of Penn Station that gave the bank access from the basement of its building to the North Concourse passageway. Section 15.01 of the lease provided that MTA could terminate the lease "by written notice in writing delivered to Lessee one (1) year prior to the date fixed in such notice for termination, provided Lessor in good faith requires the demised premises for use and occupancy by Lessor for Lessor's railroad or passenger terminal purposes."

It is undisputed that, with the access to the concourse provided by the leased parcel (6B), the highest and best use for the parcel in question (6A) was as retail space with an appraised value of approximately $80 to $100 per square foot. However, by letter dated April 23, 1990, MTA informed the bank that pursuant to the terms of the lease for parcel 6B, it was electing to terminate the lease and stated that it would like to explore the possibility of terminating the lease in less than one year. Thereafter, by notice of petition and verified petition with exhibits dated April 24, 1991, MTA sought to condemn and take title to the bank's entire building, including parcel 6A, for the purpose of a project known as the Penn Station Improvements Program.

We agree with the IAS court (Stanley Parness, J.) that the April 23, 1990 letter effectively notified the bank of the termination of its lease for parcel 6B, effective one year later, and that the value of the bank's building was thus effectively diminished by such notice and the concomitant public announcement of the $125 million general improvement plan for Penn Station. We also agree that, notwithstanding the fact that by virtue of its long-term lease on parcel 6B the bank had access from its adjacent parcel 6A to the Penn Station concourse since 1968, any value of parcel 6A as retail space was dependent on and adversely affected by the one-year public use cancellation clause in its lease for parcel 6B.

As noted by the IAS court, this case, while somewhat analogous to *Matter of City of New York* (159 Misc 617 [1936], *affd* 257 App Div 940 [1939], *lv denied* 282 NY 808 [1940]), does not

present the same circumstances or equities. Nor is this an instance where the MTA is being "excused from paying just compensation measured by the value of the property at the time of the taking" (*United States v Fuller,* 409 US 488, 492 [1973]) because it previously exercised its right to terminate the bank's lease of parcel 6B. "[G]enerally the highest and best use of a parcel may be found to be a use in conjunction with other parcels, and . . . any increment of value resulting from such combination may be taken into consideration in valuing the parcel taken" (*id.* at 490). However, if claimant's position in this case were accepted, it would engraft an additional benefit to the bank's lease of parcel 6B which was not included therein and would prevent MTA from exercising its right under the lease of terminating the lease of property owned by it for purposes of its Penn Station improvement plan, while at or about the same time taking by condemnation other property not owned by it but needed for the same purpose, without compensating the bank for parcel 6A as if the lease for parcel 6B were still in effect. This was clearly not the intention of the parties as evidenced by the terms of the lease. It clearly contemplated both the possibility of termination by MTA on one year's notice for a public use and the possibility of MTA taking the leasehold by condemnation. In the event of termination, article 15 of the lease provides that the bank is only entitled to a pro rata percentage of the $475,000 construction cost of the improvements made to parcel 6B. In the event parcel 6B were taken by condemnation, Article 17 would compensate the bank for the value of any unexpired term of the lease.

As noted by the court in *Matter of City of New York* (at 621): "The question of cancellation involves the imminence of cancellation." Thus, the IAS court properly found that, under the circumstances presented, whether or not the lease for parcel 6B was in fact terminated at the time of taking, it would be inappropriate to value parcel 6A as if access to the passenger concourse had not been terminated or was not about to be terminated. Concur—Mazzarelli, J.P., Andrias, Friedman, Marlow and Sweeny, JJ.